## STATE v. VAN R. PAIGE.

(Filed 12 January, 1968.)

**1. Criminal Law §§ 79, 89—**

Testimony in corroboration of an accomplice is admissible where the court correctly instructs the jury before its admission as to how such testimony is to be considered, reiterates such instruction in the charge to the jury, and further instructs the jury that the testimony of an accomplice should be carefully scrutinized.

**2. Criminal Law § 116—**

An instruction that the defendant's failure to testify in his own behalf is a fact and not a circumstance to be considered against him, *held* not erroneous, although an inappropriate choice of words, since the instructions in their entirety correctly charge that the defendant had a legal right to rely upon the weaknesses of the State's case and to elect not to testify in his own behalf.

**3. Criminal Law § 167—**

In order to be entitled to a new trial, defendant has the burden of establishing not only that error was committed but that such error was material and prejudicial, since verdict and judgment are not to be set aside for mere technical error.

**4. Robbery § 6—**

A judgment of imprisonment for not less than five nor more than thirty years upon conviction of armed robbery is authorized by G.S. 14-87.

**5. Criminal Law § 138—**

Where a new trial is awarded upon defendant's own application, the fact that the sentence imposed upon conviction at the second trial exceeds the sentence imposed at the first trial is not ground for legal objection, the sentence imposed at the second trial being authorized by statute, but the defendant is to be given credit for the time served on the sentence imposed at the first trial.

ON *certiorari* from *Morris, J.,* September 1963 Session of CHOWAN.

Criminal prosecution on an indictment found by the Chowan County grand jury at the September Term 1958 charging defendant on 26 March 1954 with the felony of robbery with firearms and other dangerous weapons, a violation of G.S. 14-87. Upon this indictment defendant was tried at the September Term 1958 of Chowan. Defendant was not represented by counsel. He pleaded not guilty, was found guilty as charged by the jury, and was sentenced to a term of 25 years in the State's prison. Following an exhaustion of State remedies, petitioner applied to the United States Supreme Court for a writ of *certiorari.* The United States Supreme Court on 17 June 1963 vacated the judgment and remanded the case for further consideration in the light of *Gideon v. Wainwright,* 372 U.S. 335, 9 L. Ed. 2d 799, 93 A.L.R. 2d 733. *Paige v. North Carolina,* 374 U.S. 491,

10 L. Ed. 2d 1047. On 19 July 1963 this Court, pursuant to the mandate of the United States Supreme Court, remanded the case to the Chowan County Superior Court for retrial upon the original indictment, with direction that counsel be appointed to represent defendant at the retrial. Accordingly, the Superior Court of Chowan County appointed John F. White, an experienced lawyer for many years in criminal cases and a former member for many terms of the General Assembly from his County, and George E. Tillett, a member of defendant's race and now an Assistant United States Attorney attached to the office of the United States District Attorney for the Eastern District of North Carolina, both of the Chowan County Bar, to represent defendant, and his case was called for trial at the September 1963 Session of Chowan. Defendant pleaded not guilty. Verdict: Guilty of the felony and crime of armed robbery, as charged in the indictment. The court stated that he was going to give the defendant credit "for serving from October 1, 1961, until the present time." Whereupon, the court pronounced judgment that the defendant be confined in the State's prison for a period of 27 years. From that judgment defendant appealed to the Supreme Court.

Following defendant's entries of appeal, counsel for the defendant requested that they be relieved from further responsibility in the case, and the prisoner notified the court that he would then proceed by petition for *certiorari* and made no request for continuance of the services of counsel to appear for him. Whereupon, the court entered an order relieving his counsel, White and Tillett, from appearing further for him. Following the denial of several petitions for relief filed by defendant *pro se* in the State and United States Courts, defendant applied to this Court for a writ of *certiorari* to permit him to perfect his appeal from the judgment passed against him at the September 1963 Session of Chowan. This Court allowed his petition by order of the Court in conference on 20 June 1967. The Superior Court ordered Chowan County to pay for a transcript of the record of defendant's trial at the September 1963 Session and to pay for mimeographing under the direction of the clerk of this Court the case on appeal and defendant's brief, and appointed W. L. Cooke, a competent member of the bar, to perfect defendant's appeal and to represent him on appeal.

*Attorney General T. W. Bruton and Deputy Attorney General James F. Bullock for the State.*

*W. L. Cooke for defendant appellant.*

PARKER, C.J.  The State offered evidence; defendant offered no evidence. The evidence offered by the State tends to show the following facts: On 26 March 1954 Arthur Byrum was operating a store in Chowan County located about 16 miles from Edenton on U. S. Highway #32 at a crossroad. His home is back of his store. He had been sleeping at this store about a couple of months on a bed behind the counter. He had a 25 automatic pistol and a double-barrel shotgun with him at the store, and he kept both of them by his side at night where he was sleeping. He had with him in the store where he was sleeping $5,700 worth of bonds and about $6,000 in money. Most of the money consisted of twenty and one hundred dollar bills. The bonds and the money were in a metal box right under the counter near the cash register with some goods packed in front of them. Sometime after midnight and before day he heard a noise of someone breaking into the store. When he heard this noise, he was back of the counter lying down. The next thing he looked up and saw a man coming down on him. There was no light in the store, but it was a moonlight night and he could see all right. When the man jumped down on him, he grabbed his pistol; the man got his hand and pressed it on the floor, and he could not use it. The man who jumped on him was a colored man. When he and this person were wrestling about the pistol, another colored man walked up and hit him (Byrum) over the head. This man was armed. He saw three more persons in the store other than these two. They were all colored. He testified as follows:

> "While the man who jumped on me and was taking the gun away from me, the other fellow came up and hit me over the head with a piece of iron. He liked to have 'salivated' me right then. After I got hit with the piece of iron I grabbed the rod of iron and snatched it out. He pulled a gun on me. The second one came up there, pulled a gun on me and I reached up and snatched the piece of iron out of his hand and hit him the best I could. I couldn't get so much force to it. The gun was pointed at me. The third man walked up there and snatched that rod of iron out of my hand, he finished me; that's all I know about it. There was nothing said about the gun then. They carried the gun off. After the gun was pointed at me I was hit until I did not even know where I was at or nothing. I was wounded on the head. My fingers were torn and cut. They took some stitches in my head and sewed up my finger. I was knocked unconscious. When I came to I went to call the sheriff. I told the sheriff I had been robbed. The sheriff came on to my store."

His bonds and money were stolen. Subsequently, he got back all the bonds and $170 of his money. Byrum was in the hospital 13 days.

The next morning after the robbery Byrum's wife went to the store before daylight. When she arrived the sheriff of Chowan County and her brother, Joe Forehand, were there. Her husband was very bloody. There was blood on the walls of the store, back of the counter, in the ceiling, and all over the merchandise.

Lester Griffin testified for the State in substance: Van R. Paige (defendant), Amos Paige, Jasper Boyd, Willie Boyd, and he got together about midnight on Highway #65 near Parmele in Martin County and went to Chowan County. Defendant picked out Byrum's store and said "it just looked like a good place." After the store was picked out, they drove to the church near the store and parked the car. Defendant, Amos Paige, Willie Boyd, and he got out, leaving Jasper Boyd in the car. Defendant had a 45 automatic pistol and a tire tool with him. When they reached the store, defendant pried the door open, and all of them went in. Amos Paige mashed on the cash register, and it rang. They heard a voice saying, "Who is this in here?" Whereupon, he and Amos Paige went outside a few minutes. They heard "some lumbering going on" in the store and went back inside. Defendant and Willie Boyd were behind the counter holding Arthur Byrum. Defendant hit Byrum over the head three or four times with his pistol. Willie Boyd went behind the counter and said "I got it." The last time he saw Byrum he was lying on the counter as they went out. Defendant was holding the metal box containing the bonds and money. All of them got in the automobile and went to defendant's home near Parmele. They went into a back room, and defendant and Willie Boyd counted the money and passed it around. After some of the money had been passed around, defendant took the box and money. The next day all five of them left North Carolina and went to Boston, Massachusetts. They stayed there maybe two or three weeks, and then all of them came back to Martin County. After they returned to Martin County, defendant told them he heard some "root" doctor had taken some $8,000 or $800 from his wife. All of them went back to Boston except defendant, who said he was going to stay home and try to get the money the "root" doctor had taken from his wife. All four of them were arrested in Boston and returned to Chowan County for trial. After he was arrested, he told the officers about what had occurred. He pleaded guilty to the charge against him and is now serving time. He testified on cross-examination in substance: He had known the four men who were with him in robbing Mr. Byrum about four or five years. He had been robbing and stealing with them two or three times in

Edgecombe County. The State Bureau of Investigation and the parole officers did not promise that they were going to help him if he would testify against the defendant. He got $400 out of the robbery. Defendant carried some of the money and the bonds in his suitcase to Boston. He saw the bonds the first time in Boston. He testified on redirect examination that when they went to Boston they stayed in the same apartment. They carried with them some girls from Martin County.

Willie Boyd testified for the State and gave substantially the same testimony as was given by Lester Griffin, with these exceptions: Defendant brought the box containing the bonds and money out of the store. Defendant gave him $250 out of it at Parmele. He told the officers about the robbery. He was tried some years back, pleaded guilty, and was given a sentence of from 20 to 30 years in the penitentiary, of which sentence he served six and one-half years before receiving a parole. He is now out on parole. He testified in substance on cross-examination: Defendant is his first cousin. They have been friends through the years. He (Boyd) has been convicted in Williamston for larceny. He stayed in Boston until he was apprehended by the State Bureau of Investigation. The stolen bonds were in his suitcase, but he did not know what they were. He did not get any of the bonds. The bonds were found in his suitcase in Boston.

W. W. Spence, an agent for the State Bureau of Investigation, testified for the State in substance: Two or three weeks after the robbery, he was in Boston and recovered the stolen bonds in a suitcase in an apartment there. The suitcase belonged to Willie Boyd. W. W. Spence and John B. Edwards, who is also an agent of the State Bureau of Investigation, testified as to what Willie Boyd and Lester Griffin had told them in respect to the robbery, which was in substantial corroboration of the testimony of Lester Griffin and Willie Boyd as witnesses at the trial.

When the State rested, the defendant made no motion for judgment of compulsory nonsuit. It is manifest that the State had plenary evidence to carry the case to the jury for the felony of armed robbery charged in the indictment.

Defendant in his brief states that three questions are presented. First, "Was error committed in the trial below in refusing to sustain the appellant's objections to testimony of officers offered to corroborate accomplices?" The answer to this question is, No.

The evidence challenged by defendant was competent for the purpose of corroborating Griffin and Boyd, and the court carefully instructed the jury before its admission as to how such evidence was to be considered, and also repeated it during his charge. The court

properly instructed the jury during the charge that the testimony of accomplices should be scanned and scrutinized. What the court told the jury when the evidence was admitted and in its charge was in substantial compliance with the law of this State as stated in *S. v. Case,* 253 N.C. 130, 116 S.E. 2d 429; *S. v. Saunders,* 245 N.C. 338, 95 S.E. 2d 876; Stansbury, N. C. Evidence, 2d Ed., §§ 21, 45, 50-52 inclusive.

The second question presented by defendant's brief is: "Did the court err in charging the jury that appellant's failure to offer evidence in his own behalf was a fact and not a circumstance to be considered against him?"

This question is based on this assignment of error to the charge:

> "Now in this case, gentlemen of the jury, the defendant didn't offer any evidence, nor did he go upon the witness stand. This the defendant had a right not to do, for it is a part of the organic law of the State of North Carolina that the defendant in a criminal action has the right to elect whether he will or will not offer evidence in his own behalf. He has the right to elect whether he will or will not testify in his own behalf, for he has, as he contends, the constitutional right to rely upon what he contends is the weakness of the State's case, and it is a fact and not a circumstance to be considered against him, and I so instruct you, gentlemen of the jury."

G.S. 8-54 in relevant part reads as follows:

> "In the trial of all indictments, complaints, or other proceedings against persons charged with the commission of crimes, offenses or misdemeanors, the person so charged is, at his own request, but not otherwise, a competent witness, and his failure to make such request shall not create any presumption against him."

In *S. v. Horne,* 209 N.C. 725, 184 S.E. 470, which was a case where defendant appealed from a judgment of death, the Court found no error in the trial and no error in the following instruction to the jury:

> "Now, gentlemen of the jury, the defendant did not see fit to offer any evidence. I charge you that he was within his rights in so doing. The law does not require the defendant to go on the stand as a witness. He has a right to sit mute and say nothing.
>
> "Some people on the street say that if a defendant is not guilty, he will prove it, and will go on the stand for that purpose, but the law does not say so, and I charge you that you

are not to consider the fact that the defendant did not go on the stand as a witness as any evidence of his guilt. The law says that he cannot be forced to go on the stand, and I so charge you."

Reading the challenged instruction in the instant case in its entirety, it seems manifest that the jury must have clearly understood that defendant had a legal right to elect to testify or not to testify in his own behalf, and that he had a right to rely upon the weakness of the State's case. The trial judge in his conclusion of the challenged instruction made an infelicitous choice of words, but we think considering the instruction as a whole the jury could not have gotten the impression, as he contends, that the trial judge instructed the jury that the failure of defendant to testify in his own behalf was a fact to be considered against him. Even if we concede, which we do not, technical error in the concluding portion of the challenged part of the charge which, standing alone, may be subject to criticism, we think it was harmless error that would not amount to a violation of some substantial right, and that it would not justify a new trial. However, we do not approve of it as a model of clarity. Two juries have convicted defendant as charged. A brutal assault was made by defendant on Arthur Byrum, which is not disputed. Two of defendant's accomplices, both of whom were his friends and one of whom was his first cousin, testified as State's witnesses against him, fully implicating defendant. There is no fair probability that defendant could be acquitted if he was tried again.

Johnson, J., said for the Court in *S. v. Rainey*, 236 N.C. 738, 74 S.E. 2d 39:

"The defendant also assigns error in respect to the portion of the charge dealing with the failure of the defendant to take the stand and testify in her own behalf. As to this, the court charged the jury as follows:

" 'The defendant, lady and gentlemen, did not go upon the stand and did not offer evidence. This was her prerogative. She has a right to rely upon what she conceives to be the weakness of the State's evidence, and by her plea of not guilty challenges both the truthfulness and sufficiency of the testimony.'

"It may be conceded that this instruction was incomplete and erroneous for failure of the court to go further and tell the jury that the failure of the defendant to testify 'shall not create any presumption against' her. G.S. 8-54. *S. v. McNeill*, 229 N.C. 377, 49 S.E. 2d 733. And this is so, even though the instruction relates to a subordinate feature of the case on which failure to

instruct ordinarily will not be held for error unless a request for instructions be made (*S. v. Jordan,* 216 N.C. 356, 5 S.E. 2d 156), for the reason that the court having elected to charge on this phase of the case, *i.e.,* failure of the defendant to testify, it then became its duty to charge fully and completely on this circumstance. See *S. v. Bridgers,* 233 N.C. 577, 64 S.E. 2d 867.

"However, verdicts and judgments are not to be set aside for mere error and no more. To accomplish this result it must be made to appear not only that the ruling complained of is erroneous, but also that it is material and prejudicial, and that a different result likely would have ensued, with the burden being on the appellant to show this. [Citing numerous cases.]"

See also *S. v. Woolard,* 260 N.C. 133, 132 S.E. 2d 364; *S. v. Creech,* 229 N.C. 662, 51 S.E. 2d 348; *S. v. Beal,* 199 N.C. 278, 154 S.E. 604, where it is said: "The foundation for the application of a new trial is the allegation of injustice arising from error, but for which a different result would likely have ensued, and the motion is for relief upon this ground. Unless, therefore, some wrong has been suffered, there is nothing to relieve against. The injury must be positive and tangible, and not merely theoretical."

This assignment of error is overruled.

Defendant has in the Record two assignments of error to the charge of the court in respect to corroborative evidence. We have examined these assignments of error, and the learned trial judge charged the jury in this respect in substantial compliance with the law of this State as stated in *S. v. Case, supra; S. v. Saunders, supra; S. v. Hale,* 231 N.C. 412, 57 S.E. 2d 322; Stansbury, N. C. Evidence, 2d Ed., §§ 21, 45, 50-52 inclusive. These assignments of error are overruled.

The third question propounded in defendant's brief is: "Did the court commit error by sentencing appellant at the second trial to a greater punishment than he received at his first trial?"

Defendant was convicted of the felony of robbery with firearms and other dangerous weapons, a violation of G.S. 14-87. G.S. 14-87 provides for imprisonment for not less than five nor more than thirty years for anyone who is convicted of a violation of this statute. Upon his first trial defendant was convicted of a violation of this statute and was sentenced to imprisonment for 25 years. He obtained a new trial because he was not represented by counsel at his first trial. On his second trial he was convicted again of a violation of G.S. 14-87. The judge presiding at the second trial said: "I am going to give the defendant credit for serving from October 1,

1961, until the present time," and sentenced him to imprisonment for 27 years.

The defendant was granted a new trial at his request and under our decisions that resulted in a retrial of the whole case — verdict, judgment, and sentence. *S. v. White*, 262 N.C. 52, 136 S.E. 2d 205. Three United States Courts of Appeals — the 7th, 10th, and 3rd Circuits — have recently affirmed harsher sentences following retrial: *United States v. White*, 382 F. 2d 445 (7th Cir., 1967); *Newman v. Rodriguez*, 375 F. 2d 712 (10th Cir., 1967); *Starner v. Russell*, 378 F. 2d 808 (3rd Cir.), cert. den. 19 L. Ed. 2d 189 (1967). We are aware of a contrary opinion by the 4th Circuit in the case of *Patton v. North Carolina*, 381 F. 2d 636 (4th Cir., 1967). We are also aware that the Attorney General of the State of North Carolina has petitioned the United States Supreme Court for a writ of *certiorari* to review the decision in the *Patton* case. Nothing in the Record before us shows what the evidence against the defendant was at his first trial. The evidence in the Record before us shows that defendant selected the place to be broken into, pried the door of the store open, committed a brutal assault upon Arthur Byrum, and got the major portion of the goods stolen (which he did not retain because the bonds were found in Boston where he carried them and part of the money was taken from his wife by a "root" doctor). Whether the judge in the first trial had that evidence before him or not we do not know from the Record before us. The judgment of Judge Morris in this case of 27 years imprisonment is authorized by the statute, and it is approved. From the Record we are unable to determine if defendant has been given credit for all the time that he has served on the first sentence. The Prison Department is ordered forthwith to give defendant credit for all the time that he served on the first sentence until judgment was pronounced at the September 1963 Session of Chowan County, if Judge Morris did not do so. *S. v. Weaver*, 264 N.C. 681, 142 S.E. 2d 633.

In the trial below we find

No error.