STATE OF NORTH CAROLINA v. THOMAS BERNARD MORRIS CASE #13,612
No. 6822SC218

(Filed 18 September 1968)

1. **Constitutional Law § 32— right to counsel — misdemeanor cases — necessity for finding that defendant waived counsel**
    In prosecution in the Superior Court for a misdemeanor. it was not error for the trial judge to proceed to trial without making a specific finding that the defendant intelligently and understandingly waived representation by counsel, it appearing from the record that defendant was not an indigent, that he had a privately-retained attorney at his trial in the recorder's court, that he was free on bond at all times, and that he had ample opportunity and resources to retain an attorney in Superior Court.

2. **Constitutional Law § 30; Criminal Law § 99— due process — duty of trial judge to aid misdemeanant**
    On appeal from defendant's conviction of a misdemeanor in the Superior Court, the defendant not having been represented by counsel during the course of the trial, there is no merit in defendant's contention that the trial judge erroneously failed to aid him in the presentation of his defense, since the fundamental requirement of judicial impartiality, which is mandatory for a fair trial, would be destroyed if the trial judge became

an active and interested participant in the presentation of defendant's case.

**3. Automobiles § 126; Criminal Law § 75— drunken driving prosecution — testimony as to defendant's intoxication — voir dire examination**

In a prosecution for operating a motor vehicle on a public street while under the influence of intoxicants, testimony of police officers as to the intoxicated condition of the defendant is admissible without the necessity for a *voir dire* examination where (1) the testimony of the officers is based merely upon their observation of the defendant's appearance and behavior in their presence and where (2) the defendant's own testimony in the trial removes whatever incompetency surrounded his conversations with the officers in his home.

**4. Criminal Law § 138— severity of sentence — trial in Superior Court by appeal from inferior court — imposition of greater sentence**

Under the provisions of G.S. 15-177.1, trial in the Superior Court upon appeal from an inferior court is *de novo*, and therefore the Superior Court has power to impose a greater sentence than that imposed by the inferior court, provided the sentence is within the limit prescribed by law.

APPEAL from *McLaughlin, J.*, 22 January 1968, Mixed Session, DAVIDSON County Superior Court.

On Sunday afternoon, 24 September 1967, around 5:30, the defendant was seen by George Burton, a police officer of the City of Thomasville. Burton at the time was off duty and was standing in front of his home. Burton observed the defendant come out of a house about three houses from where Burton was standing. Burton saw the defendant "come out and stagger down the steps and staggering on to a white 1959 Chevrolet parked on the left side of the street, not exactly in front of the house he came out of but a little further up the street. He got in the car and started the car up; there was an elderly man came out of the same house and got in the car with him as a passenger. He attempted to go forward and the car cut off and he cranked the car back up and backed up a few feet and then attempted to go forward again. When he went forward that time, he struck some mail boxes on the left side on the curb there. . . ."

Burton, being off duty, called to his wife and requested that she call the police. Burton got in his own personal automobile and followed the defendant. Burton testified: ". . . he was driving over to the left side of the street some, kind of weaving." Burton lost sight of the defendant in traffic, but in a few minutes he saw a white 1959 Chevrolet parked in the driveway beside a house. He recognized it as being the same automobile and the same license number that he

had previously seen. Burton was joined by Officers Smith and Batten who had arrived in a patrol car. Burton and the two officers went to the door of the house and knocked. The wife of the defendant invited them into the house. In the house, Burton talked to the defendant about the mail boxes. He told the defendant that the people were very angry about their mail boxes being knocked down and asked the defendant to do something about them. Officer Batten testified: "Mr. Morris was highly under the influence of some intoxicating beverage, and Mr. Burton was talking to him and wanting to know about the mail boxes, and Mr. Morris became very belligerent and started cursing us, and he called me a white s. o. b., and said his colored brothers was all right, but for us to leave his house. We started out of his house and he continued cursing and followed us into the street in the front of his house. When he got in the street, Officer Smith placed him under arrest for disorderly conduct and public drunk." From this episode, five warrants were issued for the defendant charging him with the following offenses: (1) operating a motor vehicle on a public street in the City of Thomasville while under the influence of an intoxicating beverage, (2) disorderly conduct and creating a disturbance by cursing and using profanity and indecent language on a public street in the City of Thomasville, (3) hit-and-run driving doing property damage, (4) public drunkenness, and (5) resisting arrest and assaulting an officer.

After his arrest, the defendant was admitted to bail, and he remained on bond for his appearance in the Recorder's Court of the City of Thomasville. On 16 October 1967, the five cases against the defendant were tried in the Recorder's Court of the City of Thomasville. The defendant appeared with his privately-retained attorney and entered a plea of not guilty to each charge.

In the recorder's court the defendant was tried without a jury. The charge of hit-and-run driving doing property damage was dismissed by the recorder's court judge and the defendant was found guilty on the other four charges.

On the charge of operating a motor vehicle on a public street while under the influence of an intoxicating beverage, the defendant was sentenced to twelve months in the county jail to be assigned to work under the supervision of the State Prison Department. This sentence was suspended for two years upon condition that the defendant remain of good character and not violate any laws; that he spend three nights in the city jail from 6:00 p.m. to 6:00 a.m.; that he not drive a motor vehicle for twelve months; and that he pay a fine of $100 and the costs. In the other three cases, judgment was

suspended upon condition that he comply with the judgment in the case of operating a motor vehicle on a public street while under the influence of an intoxicating beverage.

The defendant gave notice of appeal to the superior court and gave a justified bond for his appearance in the amount of $300 in one case, $50 each in two other cases, and $100 in the last case.

The defendant remained free on bond until his cases were called for trial in the superior court on 22 January 1968. Upon the call of the cases in the superior court, the State took a *nol pros* with leave on the charges of public drunkenness, disorderly conduct, and resisting arrest.

The defendant was placed on trial upon the warrant charging him with operating a motor vehicle on a public street in the City of Thomasville while under the influence of an intoxicating beverage. The defendant entered a plea of not guilty. A duly empaneled jury of. twelve found the defendant guilty of the offense as charged.

The defendant moved to set aside the verdict as being against the greater weight of the evidence and for a new trial for errors committed in the progress of the trial. The motions were overruled and the defendant excepted. Judgment was entered sentencing the defendant to jail for a period of eighteen months to work under the direction and supervision of the North Carolina State Department of Correction. The defendant appealed to this Court.

The defendant remains free on a bail bond in the penal sum of $1,000.

*J. LeVonne Chambers and James E. Ferguson, II, Attorneys for defendant appellant.*

*T. W. Bruton, Attorney General, William W. Melvin, Assistant Attorney General, and T. Buie Costen, Staff Attorney, for the State.*

CAMPBELL, J.

The defendant presents four questions.

[1]　One, the defendant asserts that it was incumbent upon the trial court to advise the defendant that he had a constitutional right to counsel; that if he could not afford counsel, the court would appoint counsel for him; that the court must advise the defendant of the possible adverse consequences of going to trial without counsel; and that it was error to proceed to trial without a specific finding of waiver of counsel.

Counsel for defendant have been most diligent in their presentation of this point. They have cited numerous cases with regard to the constitutional right of accused persons to have counsel. They take the position that where the offense is punishable by as much as two years imprisonment, no one can be tried until and unless the trial court makes a finding to the effect that the defendant not only understands that he is entitled to counsel to represent him but that he further understands that if he is indigent and does not have counsel, the State will afford him counsel. They also assert that the court must further find that he "intelligently and understandingly" rejects the offer for counsel. They rely upon the case of *Carnley v. Cochran,* 369 U.S. 506, 8 L. Ed. 2d 70, 82 S. Ct. 884, wherein it is stated:

"Presuming waiver from a silent record is impermissible. The record must show, or there must be an allegation and evidence which show, that an accused was offered counsel but intelligently and understandingly rejected the offer. Anything less is not waiver."

This same argument was advanced and was considered by the Supreme Court of North Carolina in *State v. Sherron,* 268 N.C. 694, 151 S.E. 2d 599. In that case, Pless, J., speaking for the Court referred to the North Carolina Statute pertaining to appointment of counsel for indigent defendants, and stated:

"Interpreting the statute, it is clearly apparent that the Legislature intended to make a distinction between the right of one charged with a felony to have court-appointed counsel and the duty to appoint attorneys for persons charged with a misdemeanor. It places upon the judge the affirmative duty to advise the defendant in felony cases that he is entitled to counsel and to appoint counsel for him if he is indigent, or unless the defendant executes a written waiver of his right thereto. None of these provisions are included as to misdemeanors, and even for an indigent defendant the judge may exercise his discretion as to appointing counsel, and shall do so only when the judge is of the opinion that the appointment is warranted."

In the *Sherron* case the defendant was tried on three charges of misdemeanors subjecting him to a maximum of two years in each or a total of six years. He was actually convicted in two of the misdemeanors and acquitted in the third and was given a sentence of ninety days. In the *Sherron* case the Supreme Court of North Carolina points out that the Supreme Court of the United States has made no requirement regarding misdemeanors and "(n)either has it

in any case we can find put a responsibility on a State court greater than that imposed by its State statute. Here, with no record to support it, the defendant can prevail only if we hold that the silence of the record must be interpreted to mean that the judge should have found that the appointment of counsel was warranted, that the defendant was indigent, and that the Court abused his discretion in failing to appoint counsel."

In the instant case the defendant has never claimed to be an indigent or illiterate. To the contrary, the record discloses a person who owns his own automobile, who worked as a landscape gardener carrying out beautification programs for different housing authorities, who lived with his wife in their own home, and whose wife was "Director of Thomasville Nursery School." The defendant had his own privately-retained attorney when he appeared in the Recorder's Court in the City of Thomasville. He appears in this Court with two privately-retained attorneys. He has been free on bail bond ever since the offense was committed 24 September 1967, and he has paid all costs for perfecting this appeal. At no time has he made the contention that he is indigent and unable to afford private counsel.

On the present record where the defendant charged with a misdemeanor is not an indigent, where he had a privately-retained attorney at his trial in the Recorder's Court in the City of Thomasville, where he has been free on bond at all times, and where he has had ample opportunity and resources to have an attorney appear for him in the superior court, if he desired, we hold it was not error for the trial court to fail to make a specific finding that the defendant "intelligently and understandingly" elected to have no attorney appear for him.

This assignment of error is overruled.

[2]    Two, the defendant asserts that it was error on the part of the trial court not "to adequately aid the defendant in the presentation of his defense."

In support of this position, counsel for defendant cite *Sheppard v. Maxwell*, 384 U.S. 333, 16 L. Ed. 2d 600, 86 S. Ct. 1507. This case does not support the defendant's position; it stands for the proposition that a trial judge must protect an accused "from the inherently prejudicial publicity which saturated the community and to control disruptive influences in the courtroom . . ."

Counsel for the defendant cite no authority to sustain their position that it is incumbent upon the trial court to become the advocate for a defendant who appears without counsel. For a trial court to be-

come the advocate of a defendant in such a situation would deprive society of one of its bulwarks. The trial judge must conduct himself so that there is fairness and equality of justice between the accused on the one hand and society on the other.

In all legal proceedings, judicial impartiality is mandatory for a fair trial; but this fairness would be destroyed if a trial judge became an active and interested participant in the presentation of a defendant's case. It would be error for the trial judge to become the advocate of either party.

The record in the instant case shows that the judge at all times acted fairly and properly in order to afford the defendant due process of law and a fair trial.

This assignment of error is overruled.

**[3]**    Three, the defendant asserts that the trial court committed error in failing to exclude statements made by the defendant to police officers and by permitting the police officers to testify as to the intoxicated condition of the defendant.

In support of this position, counsel for the defendant assert that the trial court should have had a *voir dire* examination from which it should have made a determination as to whether or not the defendant voluntarily and freely made a confession. The defendant also asserts that evidence was illegally obtained by a search and that the trial court was in error in permitting such illegal evidence to be introduced. Counsel for the defendant rely upon *Miranda v. Arizona,* 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602; *Malloy v. Hogan,* 378 U.S. 1, 12 L. Ed. 2d 653, 84 S. Ct. 1489; *Escobedo v. Illinois,* 378 U.S. 478, 12 L. Ed. 2d 977, 84 S. Ct. 1758; *Mapp v. Ohio,* 367 U.S. 643, 6 L. Ed. 2d 1081, 81 S. Ct. 1684; *Johnson v. Zerbst,* 304 U.S. 458, 82 L. Ed. 1461, 58 S. Ct. 1019; *State v. Bishop,* 272 N.C. 283, 158 S.E. 2d 511; and *State v. McDaniel,* 272 N.C. 556, 158 S.E. 2d 874.

The authorities cited by counsel for the defendant pertain to illegal searches and confessions by defendants under such circumstances that they are incompetent to be used in a trial of the defendant or that they were not voluntarily given and were in violation of the constitutional rights against self-incrimination of the particular defendant.

None of these cases and contentions is applicable in the instant case.

The defendant was being tried for operating a motor vehicle upon a public street in the City of Thomasville at a time when he was un-

der the influence of some intoxicating beverage. The State relied upon the testimony of Police Officer George Burton who testified that he saw the defendant drive the automobile on a public street and that at the time the defendant was under the influence of some intoxicating beverage. This officer testified from personal view of the defendant before he entered the automobile to start driving. This witness further testified as to the manner in which the defendant drove the vehicle. He testified to going to the home of the defendant and being invited into the home by the defendant's wife. This witness on direct examination did not testify as to any conversation with the defendant while he was in the home of the defendant. The defendant himself voluntarily brought out on cross-examination of this officer the contents of this conversation.

The State also relied upon the testimony of Police Officer Gilbert Batten. Batten did not see the defendant driving the vehicle. He did testify as to the appearance of the defendant when he observed him in the defendant's home. This did not constitute a search or any voluntary confession on the part of the defendant. It was simply the observation of the witness and his description of what he observed when looking at the defendant. There was nothing objectionable in this testimony; and even if there was, the defendant himself on cross-examination of this witness went into detail as to the conversation that he had with this witness in his home.

Police Officer Leonard Smith was not a witness on behalf of the State. The defendant himself called Police Officer Smith as one of his witnesses.

Police Officers Burton, Batten, and Smith all testified that from their personal observations of the defendant they were of the opinion that the defendant was under the influence of some intoxicating liquor. Only Officer Burton testified as to the driving of a motor vehicle on a public street by the defendant.

The defendant himself went on the witness stand. He admitted that he was driving the motor vehicle on the street but denied that he was under the influence of any intoxicating beverage at the time. If, by any reasoning, it could be established that what was said by the defendant in his home amounted to an involuntary confession and an illegal search, the defendant removed any incompetency pertaining thereto by his own testimony. *State v. McDaniel, supra.* The evidence on behalf of the defendant from the passenger in the automobile and the wife of the defendant was sharply conflicting with that of the State. A question was presented for jury determination. It is interesting to note that the charge of the court must have been

fair and impartial and a correct statement of the law, for no exception was taken to it. The evidence on behalf of the State was clearly competent and violated no constitutional rights of the defendant.

The authorities cited by the defendant in support of this assigned error are correct statements of the law when applicable, but in this case they are not apropos.

This assignment of error is overruled.

[4]     Four, the defendant asserts that it was error for the trial court to impose a greater sentence than the defendant had received in the Recorder's Court of the City of Thomasville.

The North Carolina Statute, G.S. 15-177.1, provides:

> "In all cases of appeal to the superior court in a criminal action from a justice of the peace or other inferior court, the defendant shall be entitled to a trial anew and de novo by a jury, without prejudice from the former proceedings of the court below, irrespective of the plea entered or the judgment pronounced thereon."

This statute was enacted in 1947. It was construed in *State v. Meadows*, 234 N.C. 657, 68 S.E. 2d 406. In that case the defendant had been tried in the Recorder's Court of New Hanover County upon a charge of driving a motor vehicle upon the public highways while his operator's license was revoked. He was sentenced to pay a fine of $200 and the costs of court and, in default of said payment, he was sentenced to ninety days in jail. He appealed from this judgment, and in the superior court he was given a jail sentence of twelve months. The question presented was whether the superior court had power to impose a greater sentence than that imposed by the inferior court from which the appeal was taken. Ervin, J., speaking for the Court, stated:

> "Since the trial in the Superior Court is without regard to the proceedings in the inferior court, the judge of the Superior Court is necessarily required to enter his own independent judgment. Hence, his sentence may be lighter or heavier than that imposed by the inferior court, provided, of course, it does not exceed the limit of punishment which the inferior court could have imposed."

Counsel for the defendant rely upon *Patton v. North Carolina*, 381 F. 2d 636 (4th Cir., 1967), cert. den., 390 U.S. 905, 19 L. Ed. 2d 871, 88 S. Ct. 818. In that case the 4th Circuit of the United States Courts of Appeals held that where a retrial was obtained because of a federal constitutional defect in the first trial, a harsher penalty could not be imposed on the second trial.

In that case the retrial was in the superior court where the defendant was originally tried. In the instant case it is not a question of a retrial in the same court, but it is an entirely new trial in the superior court "without regard to the proceedings in the inferior court." To support the contention of the defendant in this case would be tantamount to saying that an inferior court may establish limitations upon the superior court and would give a defendant a vested right in a penal sentence which another defendant convicted of the same offense by the same court and jury would not and does not have. This would unduly impede the administration of justice and produce a situation which might lead to the necessity of eliminating inferior courts. The view expressed in *Patton v. North Carolina, supra,* is contrary to the view of the 3rd, 7th and 10th Circuits. *United States v. White,* 382 F. 2d 445 (7th Cir., 1967), cert. den., 389 U.S. 1052, 19 L. Ed. 2d 846, 88 S. Ct. 796; *Newman v. Rodriguez,* 375 F. 2d 712 (10th Cir., 1967); *Starner v. Russell,* 378 F. 2d 808 (3rd Cir., 1967), cert. den., 389 U.S. 889, 19 L. Ed. 2d 189, 88 S. Ct. 166, petition for rehearing den., 389 U.S. 997, 19 L. Ed. 2d 501, 88 S. Ct. 488. This conflict among the Circuit Courts has not been resolved by the Supreme Court of the United States.

The North Carolina Supreme Court takes the position that upon the granting of a new trial at defendant's request there is to be a retrial of the whole case, including punishment. This is true where the retrial is in the same court that conducted the original trial. *State v. Paige,* 272 N.C. 417, 158 S.E. 2d 522. This view should apply all the more in a situation such as in the instant case where there is to be a completely new trial *de novo* in the superior court after an appeal from an inferior court.

We follow the North Carolina Statute as construed in *State v. Meadows, supra,* and the North Carolina Supreme Court in *State v. Paige, supra.*

This assignment of error is overruled.

From a review of the entire record in this case, we are of the opinion that the defendant has had a fair and impartial trial. The evidence was sharply conflicting on the factual issue. The jury decided against the defendant, and the judgment which was imposed does not exceed the limit of punishment provided in such cases. If the defendant is aggrieved thereby, his remedy is with the Parole Board, for in the trial in the superior court we find

No error.

MALLARD, C.J., and MORRIS, J., concur.