STATE OF NORTH CAROLINA v. DAVID LOUIS NETCLIFF

No. 7212SC58

(Filed 29 March 1972)

1. **Homicide § 21— second degree murder — sufficiency of evidence**
    The State's evidence was sufficient to support defendant's conviction of second degree murder.

2. **Criminal Law §§ 77, 89; Homicide § 17— defendant's statements to witness — corroboration of witness — motive**
    In this homicide prosecution, testimony by a police officer that a previous witness told him that defendant said he shot "the dudes" because they were white was properly admitted for the purpose of corroborating testimony by the previous witness, the statement constituting an admission by defendant and being highly relevant on the question of defendant's motive in firing a pistol at deceased and his companion.

3. **Criminal Law § 114— instructions — application of law as given by court — expression of opinion**
    The trial court did not express an opinion in instructing the jury on the importance of applying the law as given to them by the court rather than as they think it is or should be.

APPEAL by defendant from *Bailey, Judge,* 30 August 1971 Session of Superior Court held in CUMBERLAND County.

Defendant was tried under a bill of indictment charging him with the first degree murder of Frank H. Baca.

Defendant did not testify or offer other evidence. Evidence for the State tended to show the following:

On 31 July 1970, the deceased Baca, David Novak and Robert Simms were service men stationed at Fort Bragg. About 9:45 or 10:00 p.m. on that date, the three men left the Clown Lounge on Bragg Boulevard and started walking toward Fort Bragg. They saw three Negroes in a parking lot. One of the Negroes asked if they wanted to buy some "grass." Novak kept walking toward Fort Bragg but Simms and Baca took a couple of steps toward the Negroes; whereupon, one of the Negroes said "Don't move or I'll blow your head off." Simms testified that he saw that the man had a pistol and heard it fire twice. When the pistol fired the first time it was pointed toward Baca. The second shot struck Simms in the arm. Shortly thereafter Simms noticed a small wound in Baca's chest and saw some blood coming from the wound.

James McCoy testified that at about 10:00 p.m. on the evening of 31 July 1970, he, Kenneth Simmons, and defendant Netcliff left the Afro Lounge and started walking toward another lounge. He stated:

> "When we got in the area of the Tire Mart Kenneth Simmons walked on down to the parking lot and I walked behind him. David Netcliff didn't go too far down there. I didn't hear him say anything. I did hear some loud voices and saw some white dudes standing up there. Two of the dudes were sort of walking away. Netcliff was talking to the third one. Both of them were talking very loud and I heard one say "Cops" or something like that. I didn't hear any other word than "cop."

> At that time, I didn't see nothing in David Netcliff's hand. He had his back toward me. I heard some shots and after the first shot the person standing nearest David Netcliff grabbed his chest. He staggered a little bit and went toward the Wagon Wheel. The other two people were running. I heard a second shot and it was after the second shot the other people started running. Kenneth and I started running down the parking lot away from Bragg Boulevard. David Netcliff started running.

After we stopped, we asked him why did he shoot the dude. He said because they were white. At that time, he took the pistol out of his pocket and put it in his belt."

Kenneth Simmons also testified for the State. He stated that he saw defendant take his hand from his pocket; "[t]hen there was a flash and another flash. . . . At that time, I heard a pistol fire." The witness stated that when he heard the pistol fire, the individual standing close to defendant grabbed himself in the chest and staggered away.

A stipulation was entered that if Dr. George E. Gammel were present he would testify that he observed an autopsy performed on deceased the day following the shooting, "and he would further testify that Frank H. Baca died as a result of a perforating bullet wound to the chest which bullet wound perforated the heart and left lung causing massive hemorrhage and death."

The jury returned a verdict of guilty of murder in the second degree and judgment was entered imposing a prison sentence for a term of not less than 25 nor more than 30 years.

*Attorney General Morgan by Staff Attorney Evans for the State.*

*Sol G. Cherry, Public Defender, Twelfth Judicial District, for defendant appellant.*

GRAHAM, Judge.

[1] Defendant assigns as error the denial of his motion for judgment as of nonsuit. In our opinion substantial evidence was presented in support of every essential element of the offense for which defendant was convicted. This assignment of error is overruled.

Defendant contends that the court erred in permitting an investigating officer to testify as to a statement made by the witness James McCoy. This testimony was admitted for the sole purpose of corroborating testimony already given by McCoy, in the event the jury found that it did corroborate McCoy's testimony. It was competent for this limited purpose. *State v. Paige,* 272 N.C. 417, 158 S.E. 2d 522. Proper instructions were given limiting the purpose of the testimony at the time the officer testified and again in the court's charge to the jury.

State v. Netcliff

[2] Defendant contends that in relating McCoy's statement to the jury, the officer should not have been permitted to testify as to that portion of the statement to the effect defendant said he shot "the dudes" because they were white. It is noted that McCoy made this identical statement on the witness stand. Defendant did not object or move to strike the testimony at that time. Even if such a motion had been made, defendant would not have been entitled to have the testimony stricken. The statement constituted an admission by defendant and was highly relevant on the question of defendant's motive in firing the pistol at deceased and his companion.

[3] Defendant's final contention is that the court intimated an opinion on the evidence in the following portion of the charge:

> "Now, Ladies and Gentlemen, it is absolutely necessary that you understand and apply the law as I give it to you, not as you think it is, not as you might like it to be. This is important, for what I say the law is, is being taken down by the court reporter and if I get it wrong, that can be corrected by the Court of Appeals."

The court continued its charge by stating: "If you guess at it or if you do not concur with the law, there is no way of correcting your mistakes as to the law. Justice requires that everyone tried for the same crime be tried under the same law and have the same law applied to him. So I ask that you accept what I say the law is."

In this portion of the charge, the court was simply emphasizing to the jury the importance of applying the law as given to them by the court. We do not see how this could possibly be construed to constitute an expression of opinion on the evidence. Certainly it was important to the defendant, as well as to the State, that the jury pay close attention to the court's charge as to the law.

We have reviewed the entire record and conclude that defendant had a fair trial free from prejudicial error.

No error.

Judges CAMPBELL and BRITT concur.