State v. Moore

---

STATE OF NORTH CAROLINA v. BOBBY GLENN MOORE

No. 797SC1110

(Filed 6 May 1980)

1. **Criminal Law § 99— court's statement concerning defendant's plea—error not prejudicial**

    Defendant was not prejudiced where the court, upon call of the case for trial, stated to the jury, "It's my understanding that the state has advised the Court that they intend to proceed on the basis of a second degree murder plea," since no objection to the statement was made by defendant at the time, and the court and the jury understood defendant's plea to be "not guilty."

2. **Homicide § 21.7— second degree murder—sufficiency of evidence**

    Evidence was sufficient to be submitted to the jury in a prosecution for second degree murder where it tended to show that a party was in progress at defendant's house on the night in question; before deceased arrived at the party, defendant showed his guests a shotgun with a shell that went in it; defend-

ant stated that he would use the gun if he had to; prior to deceased's coming into defendant's house, defendant stated that he wished deceased had not come because they did not get along; when defendant got the gun later in the evening and told everyone to be quiet, he pointed it at deceased and said "especially you"; deceased snickered and the gun went off; and witnesses did not see defendant point the gun at anyone else or see defendant stumble or get bumped.

**3. Jury § 9; Criminal Law § 101— alternate juror discharged—recall within minutes—absence of findings not prejudicial**

Where an alternate juror had been dismissed for no more than two or three minutes before his recall, and there was no evidence that the juror spoke to anyone or listened to anyone during his brief stay in the courtroom, defendant was not prejudiced by the trial court's failure to make findings of fact that the juror could again accept his oath and disregard any comments that may have been made by the public while he was discharged.

APPEAL by defendant from *Reid, Judge.* Judgment entered 6 July 1979 in Superior Court, WILSON County. Heard in the Court of Appeals 16 April 1980.

The defendant was tried for the murder in the second degree of Andy Earl Jones, and was convicted of voluntary manslaughter. The State's evidence tended to show that the defendant and his girl friend invited several people to their home on the night of 16 February 1979 where the parties drank liquor and beer and smoked some marijuana. Among the guests was the decedent. Prior to the arrival of Andy Earl Jones, when the party became noisy, the defendant brought out a shotgun and shell and said he would use it if he had to. Later in the evening, Andy Earl Jones arrived, and the defendant was heard to say that he wished Jones had not come over; that the defendant did not like Jones and did not get along with him. Later in the evening, about 1:00 a.m., there was much loud talking and laughing. The defendant appeared with the gun, pointed it at the deceased and said: "Everybody's going to have to get quiet—especially you [Jones]." The deceased laughed, and the gun went off. After the shot was fired, the defendant said: "Oh, my God! What have I done;" and threw the gun down.

The judge instructed the jury on murder in the second degree, voluntary manslaughter, and involuntary manslaughter, and the jury returned a verdict of guilty of voluntary manslaughter. Defendant appealed.

*Attorney General Edmisten, by Special Deputy Attorney General John R. B. Matthis and Assistant Attorney General Rebecca R. Bevacqua, for the State.*

*Farris, Thomas & Farris, by Robert A. Farris, for defendant appellant.*

HILL, Judge.

[1] Upon the call of the case for trial, the court stated to the jury: "It's my understanding that the state has advised the Court that they intend to proceed on the basis of a second degree murder plea." The defendant contends that such language gave the jury the impression defendant had pled guilty to murder in the second degree and that the language constitutes reversible error. Such contention is without merit. Furthermore, we note no objection to the statement was made by the defendant at the time. A thorough reading of the entire record makes it clear that the court and the jury understood defendant's plea to be "not guilty." In no way was the defendant prejudiced by the judge's "slip of the tongue." This assignment of error is overruled.

The defendant next contends the trial judge erred in admitting improper evidence over the defendant's objections and in excluding competent evidence elicited by defendant at trial We will examine the questions in some detail.

On cross-examination, the defendant asked Deputy Sheriff Poythress why he had failed to bring to the stand copies of statements made by eyewitnesses. The trial judge ruled the defendant would not be allowed copies of the statements until such time as the eyewitnesses testified, and at such time the defendant would be allowed copies of the statements for impeachment purposes. The defendant contends he was placed at a disadvantage in preparing his defense by the delay in receiving such statements. The position taken by the trial judge is well within his discretion in controlling cross-examination.

Defendant then asserts the trial judge interrupted his cross-examination of a witness by suggesting an answer to the witness. Specifically, the witness had testified to a statement made by the defendant that he wished the deceased had not come to the party and the defendant's counsel had asked the witness why he had

failed to tell this during district court proceedings. The trial judge pointed out that there was no evidence the question was asked in the district court. Such action by the trial judge did not prejudice the defendant. The trial judge only kept the record straight.

Next, the district attorney questioned a witness as follows:

Q. Now, I believe Mrs. Moore testified that no one was ever shown a shotgun shell on that night, but you say that's not correct?

(Objection by Mr. Farris.
Overruled.)

A. Yes, Sir.

(Motion to Strike by Mr. Farris.
Denied.)

Admittedly, the question was leading and improper as to form, but we fail to see how the defendant suffered any prejudice.

Likewise, defendant asserts it was improper for the district attorney to question the defendant on cross-examination about prior convictions for impeachment purposes. This is a common practice and generally accepted. *State v. Miller*, 281 N.C. 70, 78, 187 S.E. 2d 729 (1972). When we look at all the questions in the assignment of error to which the defendant objects, we do not find sufficient prejudice to warrant a new trial, and, therefore, overrule this assignment of error.

[2] The defendant contends the trial court erred in denying his motion to dismiss at the end of the State's evidence and at the conclusion of all the evidence. Defendant contends that the evidence points to nothing more than an accidental killing. This argument is without merit.

The State presented the testimony of Timothy Webb who testified as follows regarding the events on the night Andy Jones was killed: that when they got to defendant's house the defendant showed them a shotgun, along with a shell that went in it; that the defendant said he would use the gun if he had to; that prior to Andy Jones' coming into the defendant's house, defendant said he wished Jones hadn't come because they didn't get along; that

when defendant got the gun later in the evening and told everyone to be quiet, he pointed it at Jones and said, "especially you"; that Jones snickered and the gun went off; and that defendant did not point the gun at anyone else nor did he see defendant stumble or get bumped.

The State also offered the testimony of Karen Strickland who testified as follows: that she had heard defendant say he didn't like Jones; that the defendant showed them the shotgun and the shell; that later the defendant went and got the gun, told everybody to be quiet, and standing right in front of Jones said "especially you"; that Jones kind of laughed and then the gun went off; that the breech on the shotgun was closed when the defendant stood in front of Andy; and that she didn't see the defendant bump anything or anybody.

The State further presented the testimony of Rhonda Glover. Glover testified to the following: that before Jones got to the defendant's house, the defendant showed them the gun and the shell and said he would use the gun if he had to; that the defendant said he didn't like Jones; that the defendant went to get the gun later in the evening, came out of the bedroom walking real fast and went straight to where Jones was; that the defendant told everybody to be quiet, looked at Andy and said "especially you"; that when Jones laughed, the defendant shot him; and that she didn't see the defendant bump into a door or get bumped.

And finally, the State presented the testimony of Ralph Lamm, who testified: that the defendant pointed the breeched shotgun at Jones so that the barrel was actually touching him when the gun went off; that he didn't see defendant point the gun at anyone else; that he didn't see anyone bump into defendant; and that he had heard of the defendant and Jones being in fights.

The State's evidence is sufficient to be submitted to the jury on the issue of defendant's guilt of murder in the second degree where as here it tends to show that the defendant intentionally inflicted a wound with a deadly weapon which caused deceased's death. *State v. Hodges*, 296 N.C. 66, 72, 249 S.E. 2d 371 (1978). The defendant's motions to dismiss were properly denied.

Defendant has grouped together six unrelated exceptions without citing a single authority in support, which he contends

point to prejudice in the court's instructions. The burden is on the defendant, not only to show error, but also to show that the error complained of adversely affected him. *State v. Paige*, 272 N.C. 417, 158 S.E. 2d 522 (1968). We have examined the exceptions which make up this assignment of error and conclude defendant has shown no error in the instructions made by the judge to the jury which would adversely affect the defendant.

[3]   Finally, defendant contends the trial judge erred in recalling an alternate juror. At the end of the case, the alternate juror was dismissed, and took a seat among the public. Almost immediately one of the original twelve jurors notified the court that she had discovered she knew some of the people involved and such knowledge would affect her decision. The court dismissed her and replaced her with the alternate juror. While the defendant did ask to note an exception, he gave no reason and declined an invitation to question the juror.

Defendant contends the trial judge should have made findings of fact that the juror could again accept his oath and disregard any comments that may have been made by the public while he was discharged. The alternate juror had been discharged for no more than two or three minutes before his recall. There is no evidence that the juror spoke to anyone or listened to anyone during his brief stay in the courtroom. It may have been the better practice to have the trial judge make findings of fact under the circumstances, but we fail to see any prejudice accruing to the defendant. The assignment of error is overruled.

In the trial of the case below, we find

No error.

Judges MARTIN (Robert M.) and WEBB concur.