STATE OF NORTH CAROLINA v. LARRY SAMUEL ALEXANDER

No. 5

(Filed 10 October 1973)

1. Criminal Law § 26; Homicide § 4— murder in perpetration of robbery — robbery of second person — conviction of both crimes

Defendant could be convicted of the murder of one person in the perpetration of an armed robbery and of the armed robbery and

State v. Alexander

felonious assault of a second person, although both robberies were committed simultaneously, since the two robberies were separate and distinct crimes.

2. **Assault and Battery § 5; Criminal Law § 26; Robbery § 6— armed robbery — felonious assault — continuous course of conduct — conviction of both crimes**

Defendant was properly convicted simultaneously of armed robbery and of felonious assault of one victim arising out of one continuous course of conduct since neither the infliction of serious injury nor an intent to kill, essential elements of felonious assault, is an essential element of armed robbery.

3. **Constitutional Law § 36; Criminal Law § 135; Homicide § 31— first degree murder — sentence of life imprisonment**

Under *Furman v. Georgia*, 408 U.S. 238, life imprisonment was the only sentence that could be imposed upon defendant's conviction of first degree murder committed prior to 18 January 1973, the date of the decision of *State v. Waddell*, 282 N.C. 431, although the jury did not recommend such a sentence at the time it rendered its verdict.

4. **Constitutional Law § 36; Homicide § 31— murder statute — constitutionality**

The murder statute, G.S. 14-17, is not unconstitutional.

APPEAL by defendant from *Friday, J.,* 4 December 1972 Schedule "C" Criminal Session of MECKLENBURG.

Defendant was tried upon three bills of indictment which were consolidated for trial. Bill No. 37019, drawn under G.S. 15-144, charged that on 7 June 1972 defendant "did kill and murder Bobby Taylor." Bill No. 37020, drawn under G.S. 14-32(a), charged that on 7 June 1972 defendant feloniously assaulted Robert Michael Martin with a pistol. Bill No. 37021, drawn under G.S. 14-87, charged that on 7 June 1972 defendant by means of a pistol feloniously robbed Robert Michael Martin of $6.00.

The State's evidence tended to show the following facts:

On 7 June 1972 Robert Michael Martin (Martin) and Bobby Taylor, employees of the Charlotte Park and Recreation Commission, went to the Bonnie Brae Golf Course in Charlotte to play golf. At approximately 12:04 p.m. they began play on the No. 1 hole. After playing the first three holes, they arrived at the fourth hole at about 12:45 p.m. There Martin observed two black men sitting on a bench five-to-six yards to the right of the tee. From the fourth tee Martin drove a 200-yard shot which landed on the left side of the fairway. Bobby Taylor's

drive landed on the extreme right toward the woods. The two men walked off the tee together for about 100 yards and then separated, each going toward his own ball.

As Martin waited for Taylor to hit his second shot a black male, later identified as defendant, came up behind Martin, pointed a gun at him, and demanded his money. Martin reached for his wallet but defendant said, "No, walk in the woods." Martin looked across the fairway and observed another black man behind Taylor with a golf club in his hand. As defendant walked Martin across the fairway he called to Taylor, telling him not to move or he would shoot and kill Martin. Taylor froze and did not move until Martin and defendant approached. Then, Martin and Taylor marched single file into the woods with defendant, gun in hand, following two or three feet behind. The other man entered the woods with them.

The group walked about 75 yards down a slope into the woods. At that point defendant ordered Martin and Taylor to lie on the ground, face down with their heads pointing up the hill. While the other man tied their feet defendant stood in front of the two men, about four feet from their heads. He was cursing, waving the gun in their faces, and saying he wanted their money. As Martin got out his wallet, which contained only six or seven dollars, the unidentified man grabbed it from his hand. Taylor had no wallet with him. The only money on his person was a little pocket change which he gave to defendant.

Infuriated because Martin and Taylor had no more money, defendant said he was going to kill them both so that they could not go to the police. Taylor offered to give him his car keys and to write him a check. These offers infuriated defendant further, and he walked back and forth from Martin's feet to Taylor's head saying, "I'm going to shoot you, shoot you." After kicking Taylor twice in the face and once in the ribs defendant announced that he was going to kill him first. During this time Martin was lying beside Taylor, propped up on his elbows, watching all that went on. Taylor was in the same position. All the while the unidentified man was standing directly behind them, a raised golf club in his hand.

Ignoring the pleas of both men to leave them alone, defendant put his gun to Taylor's neck and fired. He then "walked around to the front" and shot Taylor in the head. Stepping to

the right he shot Martin twice in the head, backed up, and shot Taylor again. After that he stepped backwards and once more pointed the pistol at Martin, but it did not go off. Defendant then ran away; the other man left when defendant fired the first shot.

Martin, who was still conscious, untied his feet. After determining that Taylor was dead he ran out of the woods. His cries attracted the attention of several golfers who carried him to the clubhouse where they called the police and an ambulance. At the hospital, doctors removed from Martin's head two bullets which were "lodged right on the bone of the skull through the meaty part of the scalp." Martin was hospitalized for six or seven days.

An autopsy revealed that Taylor had been shot once in the neck at point-blank range and twice in the head. The medical examiner testified that any one of the three wounds could have been fatal.

A firearms identification specialist testified that two of the bullets removed from Taylor and one from Martin were fired from the same gun. The other bullets which were removed were too mutilated for a positive identification.

While Martin was in the hospital, on five or six occasions, he was shown a total of 85-100 photographs of black men. From these he identified defendant as the man who had shot him and Taylor. On June 10th, Martin was taken to the police station on a stretcher to observe a lineup. In it he identified defendant as the man who had shot him.

After conducting an extensive *voir dire*, Judge Friday found that Martin's in-court identification of defendant was based solely on his observation of his assailant at the time of the "alleged robbery" at the Bonnie Brae Golf Course; that his in-court identification was not influenced by any out-of-court confrontation, lineup, or suggestive use of photographs; and that there was no evidence of any illegal or suggestive pretrial procedures conducive to a mistaken identification. Upon this finding he permitted Martin to identify defendant as one of the two men who had robbed him on the golf course.

In court Martin positively identified defendant as the man who shot him and Taylor and who robbed them both. He testified that he was unable to identify the man who tied his and

Taylor's feet. and, so far as the record discloses, this man remains unidentified. Martin testified that he was in defendant's presence for a total of ten minutes, and that he looked at him directly for six or seven of those minutes while defendant faced him holding "that gun" in his face.

Willie Taylor, a black who was playing golf at the Bonnie Brae Golf Course on the morning of 7 June 1972, teed off from hole No. 4 at approximately 11:45 a.m. At that time he saw two men sitting on a bench to the left of that tee. Thinking that he knew one of them he looked at him a good while and ascertained that the man was not the person he thought he was. He testified that he was positive defendant was the man he observed on the seat at the fourth tee about quarter of twelve on 7 June 1972. He had never seen defendant before that date, and he has not seen the other man since.

Defendant offered the testimony of six witnesses which tended to show that on 7 June 1972 defendant was in their presence on or in the vicinity of South Tryon Street (and therefore not at the golf course) from 9:00 a.m. to about 11:00 a.m. and between noon and 12:30 to 1:00 p.m. Defendant himself did not testify.

The jury found defendant "guilty of the offense of murder of Bobby Taylor in the perpetration of a felony," "guilty of the offense of assaulting Robert M. Martin with a deadly weapon with intent to kill resulting in serious bodily injury," and "guilty of the offense of robbing Robert M. Martin with a firearm." The judgment of the court was that defendant be imprisoned for thirty years for robbery with a firearm; that he be imprisoned for ten years for felonious assault; and that he be imprisoned for the remainder of his natural life for first-degree murder, this sentence to begin at the expiration of the sentence imposed for felonious assault. From these judgments defendant gave notice of appeal.

Defendant appeals to this Court as a matter of right under G.S. 7A-27 (a) in case No. 37019. Upon defendant's motion, in our discretion, under G.S. 7A-31 (a), we certified cases Nos. 37020 and 37021 for review by this Court prior to their determination by the Court of Appeals.

*Attorney General Morgan; Deputy Attorney General Vanore; and Associate Attorney General Speas for the State.*

*T. O. Stennett for defendant appellant.*

State v. Alexander

SHARP, Justice.

[1]   Defendant does not challenge the sufficiency of the State's evidence to sustian his conviction of felony-murder, that is, a murder committed in the perpetration of an armed robbery. However, his first assignment of error is that the trial judge erred in refusing to nonsuit the charges of felonious assault and armed robbery in cases Nos. 37020 and 37021. Defendant contends that these two charges were proven as essential elements of the felony-murder for which he was convicted and sentenced to life imprisonment and that, therefore, separate judgments imposing punishment for felonious assault and armed robbery in addition to the life sentence imposed for first-degree murder cannot stand.

In support of his first contention defendant cites, *inter alia, State v. Carroll,* 282 N.C. 326, 193 S.E. 2d 85 (1972) ; *State v. Peele,* 281 N.C. 253, 188 S.E. 2d 326 (1972) ; *State v. Thompson,* 280 N.C. 202, 185 S.E. 2d 666 (1972) ; *State v. Hatcher,* 277 N.C. 380, 177 S.E. 2d 892 (1970). These cases, among others, clearly hold that when an accused is tried for a greater offense, he cannot be tried either simultaneously or thereafter · for a lesser offense necessarily involved in, and a part of, the greater offense. This rule, however, has no application to the facts of of this case.

The application of the foregoing rule to felony-murder is lucidly explained in *State v. Thompson, supra.* Thompson was indicted under· G.S. 14-17 for the first-degree murder of Ernest Mackey. At the same time, in a   second bill, he was charged with feloniously breaking and entering a certain dwelling occupied by Mackey. Defendant was convicted of both first-degree murder and felonious breaking and entering. The State's evidence showed that the defendant killed Mackey in the perpetration of the felonious breaking and entering with which he was charged in the second bill. In arresting the judgment upon the second charge Chief Justice Bobbitt, speaking for the Court, pointed out that proof that the defendant feloniously broke into and entered the Mackey dwelling was an essential and indispensable element in the State's proof of murder committed in the perpetration of feloniously breaking and entering *that particular dwelling.* "The conviction of defendant for felony-murder, that is, murder in the first degree without proof of malice, premeditation or deliberation, was based on a finding by the jury that the murder was committed in the perpetration

of the felonious breaking and entering. In this sense, the felonious breaking and entering was a lesser included offense of the felony-murder. Hence, the separate verdict of guilty of felonious breaking and entering affords no basis for additional punishment. If defendant had been acquitted in a prior trial of the separate charge of felonious breaking and entering, a plea of former jeopardy would have precluded subsequent prosecution on the theory of felony-murder. *State v. Bell,* 205 N.C. 225, 171 S.E. 50 (1933)." *Id.* at 215-216, 185 S.E. 2d at 675.

In the present case, under the trial judge's charge, defendant's conviction of felony-murder could only have been based upon a finding by the jury that defendant murdered Taylor in the course of unlawfully taking money from his person by the use of a pistol whereby he threatened and endangered Taylor's life (an armed robbery). Defendant was not charged either with the armed robbery of Taylor or with feloniously assaulting Taylor. Had he been convicted and sentenced upon either of such charges, *State v. Thompson, supra,* and the other cited cases would have required that the judgment be arrested. However, the armed robbery and the felonious assault for which defendant was convicted and sentenced were crimes against Martin. They were, therefore, extraneous to the first-degree murder of Taylor. Although the two robberies were committed contemporaneously, they were two separate and distinct crimes.

[2] Likewise, the felonious assault upon Martin and the armed robbery of Martin of which defendant was convicted were two separate crimes. A conviction of armed robbery does not establish a defendant's guilt of felonious assault. In *State v. Richardson,* 279 N.C. 621, 185 S.E. 2d 102 (1971), a case involving a factual situation analogous to this one, it is said: "The crime of robbery includes an assault on the person. . . . The crime of armed robbery defined in G.S. 14-87 includes an assault on the person with a deadly weapon. The crime of felonious assault defined in G.S. 14-32 (a) is an assault with a deadly weapon which is made with intent to kill and which inflicts serious injury. These additional elements of the crime of felonious assault are not elements of the crime of armed robbery defined in G.S. 14-87." *Id.* at 628, 185 S.E. 2d at 107.

Thus, if a person is convicted simultaneously of armed robbery and the lesser included offense of assault with a deadly weapon, and both offenses arise out of the same conduct, separate judgments may not be pronounced. "In such case, the

armed robbery is accomplished by the assault with a deadly weapon and *all* essentials of this assault charge are essentials of the armed robbery charge. However, if a defendant is convicted simultaneously of armed robbery and of *felonious* assault under G.S. 14-32(a), neither the infliction of serious injury nor an intent to kill is an essential of the armed robbery charge." *Id.* at 628, 185 S.E. 2d at 108.

Defendant's first assignment of error is without merit.

[3]   Defendant's second contention, based on assignments of error 2 and 3, is that he is entitled to a new trial because the trial judge imposed upon him the sentence of life imprisonment in the absence of such a recommendation from the jury at the time it rendered its verdict that defendant was guilty of murder in the first degree.

Defendant assigns no error in the trial on the charge of murder in the first degree, and we perceive no logic in his contention that he is entitled to a new trial upon the issue of his guilt because of the sentence imposed. We hold, however, that the life sentence imposed was the only permissible judgment.

In *Furman v. Georgia,* 408 U.S. 238, 33 L.Ed. 2d 346, 92 S.Ct. 2726 (decided 29 June 1972), the Supreme Court held unconstitutional the imposition of the death sentence under statutes such as G.S. 14-17 which permitted court or jury, in its discretion, to determine whether the punishment for first-degree murder should be life or death. *Furman,* however, did not affect the validity of a defendant's conviction of a capital crime; it merely deprived the Court of the power to impose the death sentence. *State v. Waddell,* 282 N.C. 431, 194 S.E. 2d 19 (1973); *State v. Foster,* 282 N.C. 189, 192 S.E. 2d 320 (1972); *State v. Davis,* 282 N.C. 107, 191 S.E. 2d 664 (1972).

On 18 January 1973 in *State v. Waddell, supra,* this Court held that the effect of *Furman v. Georgia, supra,* upon G.S. 14-17 was (1) to invalidate its proviso which permitted the jury, in its discretion, to substitute life imprisonment for the death penalty as the punishment for first-degree murder and (2) to make death the only permissible punishment. The Court further held, however, that because of the *ex post facto* nature of the *Waddell* decision, "North Carolina's mandatory death penalty for . . . murder in the first degree . . . may not be constitutionally applied to any offense committed prior to the date

---

of this decision but shall be applied to any offense committed after such date [18 Jan. 1973]." *Id.* at 446, 194 S.E. 2d at 29. Thus, on 7 June 1972, the date of the homicide for which defendant has been convicted, "murder was not a capital crime; the only permissible punishment for murder in the first degree was life imprisonment." *State v. Watkins,* 283 N.C. 17, 32, 194 S.E. 2d 800, 810 (1973). Clearly, therefore, the proper judgment was imposed upon defendant in case No. 37019. *See State v. Frazier,* 283 N.C. 99, 195 S.E. 2d 33 (1973); *State v. Miller,* 281 N.C. 740, 190 S.E. 2d 841 (1972) and cases cited therein.

[4] Defendant's fourth assignment of error is that the trial court erred in failing "to declare G.S. 14-17 unconstitutional." In his brief defendant cites no authority in support of this contention. His only argument is that when the Supreme Court of the United States invalidated the proviso of G.S. 14-17 "the other portion [was] left in an ambiguous state" and this Court, "by its ruling of January 18, 1973 [Waddell] has only added to the confusion"; that "the death penalty is revised, which in turn is contradictory to the United States Supreme Court decision." Any discussion of this assignment would serve no purpose. As we said in *State v. Duncan,* 282 N.C. 412, 420, 193 S.E. 2d 65, 70 (1972), "[T]his same contention [that G.S. 14-17 is unconstitutional] has been considered by this Court in a number of recent cases and has been decided adversely to defendant's contention."

In the trial below, we find

No error.