STATE OF NORTH CAROLINA v. WILBUR JAMES SANDERS

No. 20

(Filed 7 October 1975)

1. **Assault and Battery § 14; Property § 4— damage to person and property by use of explosives — sufficiency of evidence**

    Evidence for the State was sufficient to permit the jury to find that defendant was present at the scene of the offense for the purpose of aiding the perpetrators and that the perpetrators were aware of such purpose where the evidence tended to show that defendant was present when a bomb was placed in an SBI agent's car, defendant was seated at that time in the automobile of one of the perpetrators guarding a State's witness with a pistol, and defendant and the witness remained in the car after the witness pointed out the SBI agent's car to the perpetrators.

2. **Criminal Law § 9— aider and abettor — finding required**

    The mere presence of the defendant at the scene of the crime, even though he is in sympathy with the criminal act and does nothing to prevent its commission, does not make him guilty of the offense; rather, to support a conviction, the State's evidence must be sufficient to support a finding that the defendant was present, actually or constructively, with the intent to aid the perpetrators in the commission of the offense should his assistance become necessary and that such intent was communicated to the actual perpetrators.

3. **Criminal Law § 169— failure to object to evidence — subsequent similar evidence properly admitted**

    The trial court did not err in allowing testimony which defendant alleged was hearsay since almost identical testimony was previously given and defendant made no objection.

4. **Property § 4— damage to property by use of explosives — description of property in indictment — sufficiency**

    The trial court did not err in failing to quash the bill of indictment charging defendant with wilful and malicious damage to personal property by means of an explosive device since the description of the property as a "1974 Ford Torino owned by the North Carolina State Bureau of Investigation, being at the time occupied by another, Albert Stout, Jr." was a sufficient description of the automobile in question to inform defendant with certainty as to the crime that he had allegedly committed.

5. **Criminal Law § 26— one explosion — damage to person and property — two offenses — no double jeopardy**

    Where defendant was tried under separate bills of indictment for wilful and malicious damage to occupied personal property, an automobile, by means of an explosive device and for wilful and malicious injury to a person by means of an explosive device, the trial court did not err in refusing to quash the second indictment though both of-

fenses arose from the same explosion, since two separate offenses occurred which were punishable under two separate statutes.

**6. Criminal Law § 45— experimental evidence — substantially similar conditions**

In a prosecution for damage to occupied personal property and for injury to a person by means of an explosive device, the trial court did not err in admitting experimental evidence where the testimony of the agent conducting the experiment was sufficient to show that he had created substantially similar conditions as those that produced the actual explosion.

**7. Criminal Law § 102; Property § 4— district attorney's use of word "explosion" — no invasion of jury province**

Where defendant stipulated early in the trial that " . . . there was in fact one explosion damaging . . . " an automobile and its occupant, and where the occupant testified without objection that he received certain injuries as a result of the explosion and described the explosion, defendant could not complain that the use of the word "explosion" by the district attorney in questioning witnesses invaded the province of the jury by assuming that an explosion had occurred.

**8. Criminal Law §§ 43, 95— admission of photographs — restrictive instruction — sufficiency**

Defendant was not prejudiced where the trial court instructed the jury that photographs were admissible only to illustrate witnesses' testimony but the court failed to instruct that the photographs were admissible for illustrative purposes only if the jury found that they did illustrate the witnesses' testimony.

**9. Criminal Law § 114— instructions — more time devoted to State's evidence — no expression of opinion**

Though the trial court spent more time summarizing the State's evidence than the evidence of defendant, the court did not thereby express an opinion on the evidence in violation of G.S. 1-180, since the greater amount of time was spent on State's evidence because the State had presented considerably more evidence than had defendant.

**10. Criminal Law § 163— jury instructions — failure to object at trial — no consideration on appeal**

Defendant's objections to the trial court's charge stating one of defendant's contentions and recapitulating the evidence came too late when they were made for the first time on appeal.

**11. Criminal Law § 113— defendant as aider and abettor — jury instructions applying law to facts**

The trial court properly applied the law to the evidence and set forth the acts of the defendant that would constitute aiding and abetting where the court instructed the jury that they must find beyond a reasonable doubt that " . . . defendant was present at the time the crime was committed and that he aided or encouraged [the perpetrators] by holding a pistol on Hutton and keeping him from running to the officers and that in so doing the defendant knowingly

State v. Sanders

advised, instigated, encouraged or aided Sellers or Blackmon or either of them. . . . ”

**12. Criminal Law § 116— charge on defendant's failure to testify — statutory language not mandatory**

In charging the jury on defendant's failure to testify the trial court is not required to use the exact language of G.S. 8-54 that such failure "shall not create any presumption against him."

**13. Criminal Law § 113— defendant as aider and abettor — finding of one or both principals' guilt required**

Where defendant was tried separately from the principals in this case, the trial court did not err in making it clear that as long as the jury found that one or both of the principals were guilty of all elements of the crimes charged, then defendant could be guilty of aiding and abetting if so found.

**14. Assault and Battery § 15; Property § 4— damage to person and property by use of explosive — instructions**

The trial court's charge, when construed contextually, made it clear to the jury that defendant was charged with wilful injury to a person by use of explosives and with wilful damage to occupied personal property, and the jury was not misled into thinking that they need only find injury to a named person in order to convict in both cases.

APPEAL by defendant pursuant to G.S. 7A-27(a) from *Rousseau, J.,* at the 20 January 1975 Special Criminal Session of CABARRUS Superior Court.

Defendant was tried on separate bills of indictment charging him with willful and malicious damage to occupied personal property, an automobile, by means of an explosive device, in violation of G.S. 14-49.1, and with willful and malicious injury to Albert Stout, Jr., by means of an explosive device, in violation of G.S. 14-49. The case was transferred from Rowan County on defendant's motion for a change of venue. The bills of indictment were consolidated for trial without objection, and defendant entered pleas of not guilty to both charges.

The testimony of Albert Stout, Jr., tended to show that he was an undercover agent for the State Bureau of Investigation, residing in Salisbury, North Carolina. He was assigned to the Charlotte area, where he was engaged in buying narcotic drugs from known sellers and aiding in their prosecution. On 9 September 1974, in Charlotte, Stout went to the home of Jule Hutton on several occasions from 3:00 p.m. to 10:30 p.m., but failed to contact Hutton.

Agent Stout returned to his home in Salisbury about midnight on 9 September 1974, parked his car, a brown 1974 Torino, in the parking area adjacent to his apartment, locked it, and went into his apartment. He returned to his car the next morning, 10 September 1974, about 8:00 a.m., unlocked the door and got in. Upon turning the key in the ignition, he felt "a searing pain" as if he were "caught up in a vacuum" and heard a "loud, bursting noise." Stout was severely injured in the explosion. His right foot and leg were blown off, his right eye and ear destroyed or severely damaged, his right hand mangled, and various bones were broken.

Stout had testified against Jeannette Grier in connection with some heroin buys and against Otis James Blackmon, a co-defendant not on trial. He had never met or testified against defendant.

Further evidence presented by the State may be summarized as follows: Following the explosion, the local law enforcement officers cordoned off the area. Two SBI forensic chemists searched the area thoroughly, photographing and cataloging numerous items of evidence. Pieces of orange and yellow wire and a metal clip were found in the vicinity of the Stout automobile. SBI chemist Cone found an alligator clip connected to one of the posts of the starter. SBI chemist Pearce testified that traces of certain chemicals had been found on the wires and floorboard, and from his analysis it was his opinion that the explosion was caused by dynamite.

Jule Hutton, a codefendant not on trial, testified that he was an informer for the Charlotte Police Department and the SBI and that he knew Agent Stout, whom he was supposed to meet on 9 September 1974. About noon on 9 September, Hutton had gone to the home of Jeannette Grier in order to meet a girl named Sissy Gal. When he arrived, he found the defendant (whom Hutton only knew as "Chuck"), Otis Blackmon and Jack Sellers. Blackmon grabbed Hutton and hit him. Sellers then gave defendant a .38-caliber pistol which defendant held on Hutton. During this time Hutton saw a brown paper bag which contained four or five sticks of dynamite, some wire, clips and silver-looking capsules. Later that night Sellers, armed with the same .38-caliber pistol, took Hutton to Hutton's house. Shortly thereafter, Stout arrived and knocked on the door. When Hutton and Sellers failed to answer, Stout left. Soon thereafter, Hutton and Sellers returned to Grier's house.

About midnight, defendant, Sellers and Hutton left in Sellers' car and drove down I-85 to the Salisbury exit. There they met Blackmon and drove to Agent Stout's apartment where Hutton pointed out Stout's brown 1974 Torino. Blackmon and Sellers, carrying the same brown bag in which Hutton had previously seen the dynamite, wires, etc., went to Stout's car, opened the hood, and were out of sight for some eight or ten minutes. They returned without the brown bag.

Defendant, Sellers and Hutton returned to Charlotte after leaving Blackmon where he had parked his car.

The State rested and defendant moved for judgment as of nonsuit in each case, which motions were denied.

Defendant did not testify but offered testimony tending to show an alibi through Eva Spraggins, with whom he lived, Bernice Scott, Eva's mother, Darrell Evans, Eva's cousin, and Al Porter. Their testimony placed defendant at the Spraggins' home during the afternoon of 9 September and that evening from approximately 6:00 p.m. until 11:30 p.m., at which time he left with Wiley Lawrence Anderson. He returned to the Spraggins' home about 12:45 a.m. and spent the remainder of the night there with Eva Spraggins.

Other evidence pertinent to decision will be set out in the opinion.

The jury returned verdicts of guilty as to both charges and defendant was sentenced to life imprisonment for the willful and malicious damage to occupied personal property by means of an explosion, and to fifteen years in prison for the willful and malicious injury to Albert Stout, Jr., by means of an explosion. Defendant appealed from the judgment imposing life imprisonment and we allowed *certiorari* prior to determination by the Court of Appeals on the charge of willful and malicious injury to Albert Stout, Jr.

*Attorney General Rufus L. Edmisten by Assistant Attorney General Thomas B. Wood, for the State.*

*Clarence E. Horton, Jr., for defendant appellant.*

MOORE, Justice.

Defendant first assigns as error the failure of the trial court to allow his motion for nonsuit at the close of the State's

evidence and at the close of all the evidence. This assignment is without merit.

[1]   Defendant was present when the bomb was placed in Agent Stout's automobile. At that time, he was seated in Jack Sellers' automobile guarding the witness Hutton with a pistol. Defendant and Hutton remained in the car after Hutton had pointed out Stout's car. Blackmon and Sellers got out of Sellers' car carrying a brown bag which earlier in the night had contained four or five sticks of dynamite. After Blackmon and Sellers reached Stout's car, they raised its hood and worked for some eight or ten minutes, then closed the hood and returned to Sellers' car without the brown bag. The four men then left and returned to where Blackmon's car had been parked. Blackmon then got in his own car and the others returned to Charlotte.

Earlier that night defendant had been with Sellers at Jeannette Grier's house when Blackmon arrived carrying a brown bag. Sellers took four or five sticks of dynamite out of the bag, together with some wire folded up with clips on the end, and some silver-looking capsules. Sellers later, armed with a pistol, took Hutton to Hutton's house apparently to verify that Hutton had been seeing Stout and that Hutton had been acting as an informer to Stout. When Stout arrived at Hutton's home and knocked on the door, Hutton, acting under orders from Sellers, failed to respond. Stout then left and Sellers and Hutton returned to Jeannette Grier's home. From then until Sellers and Blackmon went to Stout's car, defendant continued to point the pistol at Hutton. After the men returned to Charlotte, defendant told Sellers that they had no reason to kill Hutton, that Hutton was a part of it, and that if anything happened Hutton was dead anyway. Defendant then knocked Hutton down and Hutton crawled out of the house to his car and left.

[2]   The mere presence of the defendant at the scene of the crime, even though he is in sympathy with the criminal act and does nothing to prevent its commission, does not make him guilty of the offense. *State v. Rankin,* 284 N.C. 219, 200 S.E. 2d 182 (1973) ; *State v. Gaines,* 260 N.C. 228, 132 S.E. 2d 485 (1963). To support a conviction, the State's evidence must be sufficient to support a finding that the defendant was present, actually or constructively, with the intent to aid the perpetrators in the commission of the offense should his assistance become necessary and that such intent was communicated to the actual

perpetrators. The communication or intent to aid, if needed, does not have to be shown by express words of the defendant but may be inferred from his actions and from his relation to the actual perpetrators. *State v. Hargett,* 255 N.C. 412, 121 S.E. 2d 589 (1961) ; *State v. Holland,* 234 N.C. 354, 67 S.E. 2d 272 (1951).

It is elementary that for the purpose of ruling upon a motion for judgment of nonsuit, evidence for the State is to be taken to be true and every reasonable inference favorable to the State is to be drawn therefrom and discrepancies therein are to be disregarded. *State v. Rankin, supra; State v. Felton,* 283 N.C. 368, 196 S.E. 2d 239 (1973) ; *State v. Spencer,* 281 N.C. 121, 187 S.E. 2d 779 (1972).

The evidence for the State was sufficient to permit the jury to find that defendant was present at the scene of the offense for the purpose of aiding Blackmon and Sellers and that Blackmon and Sellers were aware of such purpose. Thus, there was no error in the denial of the motion for judgment of nonsuit.

[3] Defendant next contends the court erred in allowing hearsay testimony. The witness Stout was asked the question, "Was he [Hutton] there?" Stout answered, "No, he was not." Defendant contends that this was indirect hearsay since the answer was based on a statement made by a Negro female when Stout asked her if Hutton was home, and she replied that he was not. This contention is without merit. Almost identical testimony had just been given by Stout without objection when he testified : "A Negro female came to the door. She informed me that Mr. Hutton was not there and who was calling and I told her it was a friend and I then left." Since defendant made no objection to this testimony, his subsequent objection to evidence of the same or similar import was of no avail. *State v. Stegmann,* 286 N.C. 638, 213 S.E. 2d 262 (1975) ; *State v. Van Landingham,* 283 N.C. 589, 197 S.E. 2d 539 (1973) ; *State v. Davis,* 282 N.C. 107, 191 S.E. 2d 664 (1972) ; *State v. Jarrett,* 271 N.C. 576, 157 S.E. 2d 4 (1967). This same rule applies to the other questions objected to by defendant as they had also been substantially answered by other witnesses. This assignment is overruled.

[4] Defendant next assigns as error the failure of the trial court to quash the bill of indictment charging defendant with willful and malicious damage to personal property by means of an explosive device, for the reason that the property was only

described as a "1974 Ford Torino," which defendant alleges was not an adequate description. Defendant cites *State v. Conrad,* 275 N.C. 342, 168 S.E. 2d 39 (1969), in support of this position.

It is noted that in *Conrad,* the Court did not hold that the description of the automobile in the indictment was insufficient. The description in that bill of indictment was strikingly similar to the description in the bill of indictment in the present case. There, the automobile was described as "the 1966 Mercury Comet automobile, the property of Fred C. Sink, and located at 318 Spruce Street in Lexington." In the present case, in addition to the description, a "1974 Ford Torino," the following was added: "owned by the North Carolina State Bureau of Investigation, being at the time occupied by another, Albert Stout, Jr." This was a sufficient description of the automobile in question to inform defendant with certainty as to the crime that he had allegedly committed. *State v. Bass,* 280 N.C. 435, 186 S.E. 2d 384 (1972); *State v. Sparrow,* 276 N.C. 499, 173 S.E. 2d 897 (1970). Had defendant required additional information for the preparation of his defense, he could have requested a bill of particulars prior to the trial. *State v. Springer,* 283 N.C. 627, 197 S.E. 2d 530 (1973).

[5] Defendant further contends that the second indictment should be quashed for the reason that it arises from the same alleged criminal act as the first and that he is being subjected to multiple prosecutions for the same offense. He relies on *State v. Potter,* 285 N.C. 238, 204 S.E. 2d 649 (1974), to support this contention.

In *Potter,* the defendant was charged with two separate offenses of robbery, in violation of G.S. 14-87. The facts as disclosed by the opinion in that case are as follows:

"Each indictment refers to the felonious taking of $265.00 on 29 December 1972. Neither alleges the ownership of the $265.00 to which it refers. Although the reading of the two indictments, *side by side,* leaves the impression each refers to the same $265.00, and that Hall and Harrell were robbed on the same occasion, neither refers to the other. Each indictment is complete.

"The evidence discloses *all* of the $265.00 defendant obtained from Hall and Harrell belonged to the Food Market, their employer; and that, on the same occasion, and in the

State v. Sanders

immediate presence of both, defendant, by the *threatened* use of a revolver, first obtained from Hall the cash in register No. 1 and immediately thereafter obtained from Harrell the cash in register No. 2. Although we find no evidence that defendant actually pointed the revolver at Hall or at Harrell, each was put in fear by defendant's threatened use of the revolver. Neither Hall nor Harrell was physically injured in any manner.

"The evidence indicates that, when the robbery occurred, Hall had immediate charge of register No. 1 and Harrell had immediate charge of register No. 2. However, the cash in both registers belonged to their employer. Both Hall and Harrell had custody thereof for their employer and the right to retain possession of *all* of it against robbery or theft.

"In the light of the evidence, we hold that the verdicts have the same effect as if defendant had been found guilty after trial on a single indictment which charged the armed robbery of Hall and Harrell on 29 December 1972 in which $265.00 of the money of Food Market, their employer, had been taken from their persons and presence."

*Potter* is clearly distinguishable from the present case. Here, the record is clear that defendant was charged in two separate indictments with two separate offenses. In the first, he is charged with damage to personal property occupied by an individual, in violation of G.S. 14-49.1; and in the second, he is charged with willfully and maliciously injuring an individual by the use of explosives, in violation of G.S. 14-49. Admittedly, all injuries arose out of the same explosion, but two separate offenses occurred which were punishable under two separate statutes.

In *Potter,* only one robbery occurred. There the Court specifically implied that if other offenses arose out of the same original wrongful act it would not necessarily treat such attendant offenses as part of the original offense, stating:

"We express no opinion as to factual situations in which, in addition to robbery, an employee is physically injured or killed, or to factual situations in which, in addition to the theft of the employer's money or property, the robber takes money or property of an employee or customer."

State v. Sanders

*See State v. Carey,* 285 N.C. 509, 206 S.E. 2d 222 (1974) ; *State v. Alexander,* 284 N.C. 87, 199 S.E. 2d 450 (1973), cert. den. 415 U.S. 927, 39 L.Ed. 2d 484, 94 S.Ct. 1434 (1974) ; *State v. Cameron,* 283 N.C. 191, 195 S.E. 2d 481 (1973) ; *State v. Richardson,* 279 N.C. 621, 185 S.E. 2d 102 (1971).

The motions to quash the bills of indictment were properly overruled.

[6] Defendant next assigns as error the trial court's conclusion that an experiment carried out by Special Agent Pearce was carried out under substantially similar circumstances as those which surrounded the original transaction (the explosion), and the further conclusion that the experimental testimony was admissible in evidence.

In a recent case, *State v. Jones,* 287 N.C. 84, 98, 214 S.E. 2d 24, 34 (1975), Justice Branch, after reviewing the authorities from this and other states, stated the rule as to the admissibility of experimental evidence as follows:

" . . . Although experimental evidence should be received with great care, it is admissible when the trial judge finds it to be relevant and of probative value. Even upon such finding the admission of experimental evidence is always subject to the further restriction that the circumstances of the experiment must be *substantially* similar to those of the occurrence before the court. Whether substantial similarity does exist is a question which is reviewable by the appellate courts in the same manner as is any other question of law. *State v. Carter,* 282 N.C. 297, 192 S.E. 2d 279; *Love v. State* [457 P. 2d 622 (Alaska)]."

*See* 2 Strong, N. C. Index 2d, Criminal Law § 45, and cases therein cited.

In the present case, the trial judge found:

"COURT: Let the record show that during the direct examination of Special Agent Pearce, that the Solicitor asked the witness about a certain experiment at which time the defendant objected and the jury was sent from the jury room—courtroom, for the purpose of Voir Dire. That after hearing the evidence and argument of counsel, the Court makes the following findings of fact: That the witness took a similar Ford Torino automobile, and placed a clip on the

starter post; that he placed another clip on a ground position on the motor vehicle; that he took an electrical blasting cap and placed to the end of the wire; that the clips were alligator type clips; that he used an Atlas blasting cap; that the wire is consistent with Atlas blasting cap wire; that after attaching the blasting cap and the clip to the post and the clip to the ground, he then turned the ignition on and the blasting cap detonated immediately.

"Based on the foregoing findings of fact, the Court concludes that the experiment was carried out under substantially similar circumstances as to those which surrounded the original transaction and the Court concludes that the experimental testimony can be introduced into evidence."

The record reveals that the testimony of Special Agent Pearce was sufficient to show that he had created substantially similar conditions as those that produced the actual explosion. He conducted the experiment by using clips and wires similar to those he found in the wreckage of the victim's car and by using an identical 1974 brown Ford Torino. He placed a clip on the starter post of the experimental car in the position he had found a clip on the damaged car. The wire that had been found was of the composition and color of Atlas blasting cap wire, thus indicating that an Atlas blasting cap was used in the actual explosion. Therefore, in the experiment an Atlas blasting cap was used to simulate actual conditions.

Agent Pearce further concluded from traces of nitroglycerin and ethylene glycol deposits found on a piece of wire running from the starter post clip and on the floorboard that the damage had been caused by dynamite. His investigation of the location of the physical evidence, including the wires and clips on the damaged automobile, indicated to him that a complete circuit was constructed through the use of these materials which was culminated by the spark caused by the ignition being turned on. Therefore, on the experimental car, Agent Pearce actually placed a clip on the starter post and a clip on a ground position on the car and attached an Atlas blasting cap to the end of these wires. He then turned on the ignition of the experimental automobile and the blasting cap detonated immediately.

This experimental evidence was relevant and of probative value since it tended to enlighten the jurors in their search for

the truth. Precise reproduction of circumstances is not required, and we hold that the trial judge correctly concluded that the circumstances of the experiment were substantially similar to those surrounding the actual explosion. Therefore, the trial judge correctly admitted the experimental evidence.

[7] Defendant further contends that in questioning various witnesses the district attorney at times assumed that an explosion had occurred, thereby invading the province of the jury. For example, on one occasion Agent Pearce, a forensic chemist thoroughly qualified in the field of explosives, was asked:

"Q. Based on your findings of the presence of sodium nitrate and ethyleneglycol dinitrate, did you form an opinion satisfactory to yourself as to what caused the explosion heretofore described by Special Agent Stout?

"A. Yes, sir, I did. OBJECTION. OVERRULED. EXCEPTION.

"Q. And what is your opinion, Mr. Pearce?

"A. It is my opinion. . . .

"OBJECTION. OVERRULED. EXCEPTION.

"A. . . . that this explosion was caused by dynamite.

"MR. HORTON: The defendant moves to strike his answer.

"MOTION DENIED. EXCEPTION."

Defendant contends that Agent Pearce answered one of the very questions before the jury for consideration: "Was there an explosion injuring Mr. Stout and damaging the automobile?" The evidence clearly shows that an explosion had occurred. Agent Stout had previously testified without objection that his right eye was destroyed as a result of the *explosion*. He further testified without objection that he had a compound fracture of the tibia, and of smaller bones in the front foot area as a result of the *blast*. The victim, Agent Stout, described the occurrence as follows: His automobile was parked where he left it the night before. He opened the door with the key and then put the key in the ignition of the automobile. He turned the ignition and there was a searing pain as if he were caught up in a vacuum. Then there was a loud, bursting noise and he was thrown to the seat of the automobile face down. Furthermore, early in the trial, counsel for defendant stated: " . . . [W]e can stipulate there

was in fact one explosion damaging the automobile and injuring Mr. Stout by its force." The real question involved in the present case is not did an explosion occur, but did defendant aid and abet those who made it occur. In view of the stipulation and Agent Stout's testimony without objection that he was injured by the *explosion* or blast, the objection to the use of the word "explosion" by the district attorney came too late. *State v. Stegmann, supra; State v. Van Landingham, supra; State v. Davis, supra; State v. Jarrett, supra.*

The court allowed certain exhibits into evidence and instructed the jury that these were introduced for illustrative purposes only. Defendant contends that there was not sufficient foundation for the introduction of these exhibits. Whether there is sufficient evidence of the correctness of such an exhibit to render it competent to be introduced into evidence for the purpose of illustrating or explaining the witness's testimony, is "a preliminary question of fact for the judge." *State v. Gardner,* 228 N.C. 567, 46 S.E. 2d 824 (1948); *State v. Matthews,* 191 N.C. 378, 131 S.E. 743 (1926); 1 Stansbury's N. C. Evidence, § 34 (Brandis Rev. 1973); 2 Strong, N. C. Index 2d, Criminal Law § 43. The record discloses that there was ample evidence to justify the court's permitting their introduction.

[8] Defendant further contends that the court erred in instructing the jury with reference to these photographs as follows: " . . . These photographs are introduced for the purpose of illustrating the witness' testimony and for no other purpose." Defendant excepts to the failure of the court to instruct the jury that the photographs were admissible for illustrative purposes only if the jury found that they did illustrate the witnesses' testimony. No request was made by defendant that the admission of the photographs be limited or restricted. In the absence of such request, an unrestricted admission would not be error. *State v. McKissick,* 271 N.C. 500, 157 S.E. 2d 112 (1967); *State v. Cade,* 215 N.C. 393, 2 S.E. 2d 7 (1939); 2 Strong, N. C. Index 2d, Criminal Law § 43. Nevertheless, the judge, having undertaken to instruct the jury, should have completed the instruction as he did on the introduction of other photographs, when he stated: "State's Exhibits 3 and 4 are introduced for the purpose of illustrating the witness' testimony, if you find that it does illustrate the witness' testimony and for no other purpose." We fail to see, however, how this omission could prejudice defendant.

The photographs to which defendant objected were of the wire found at the scene, a metal clip also found at the scene, and the clip found on the starter. There was no evidence to contradict the fact that these photographs properly depicted each of the items shown or that these items had not been found at the scene. Later, the objects themselves were introduced without objection. Defendant also objected to the introduction of State's Exhibit 5, a diagram showing the streets and buildings, which was explained by the witness who drew it to scale. At the request of defendant's counsel, this witness was asked if this diagram fairly and accurately represented the complex at the time he visited it. The witness replied that it did. The court thereupon stated: "Let it be introduced. . . . This also is introduced for the purpose of illustrating the witness' testimony, if you find that it does illustrate their testimony." Again, we fail to perceive how defendant could be prejudiced by the admission of this diagram or by the judge's instruction concerning it. This assignment is overruled.

Other assignments concerning the introduction of testimony have been considered and found to be without merit.

[9, 10] Defendant has brought forward a number of assignments of error relating to the court's charge. First, defendant assigns as error the failure of the trial court to give a statement of defendant's evidence equal to that given the evidence for the State, and to equally stress the contentions of the State and defendant, as required by G.S. 1-180. Defendant complains that the evidence elicited on direct examination by the State was extensively recapitulated while that elicited on defendant's cross-examination was scarcely mentioned. This assignment is without merit. The requirement of G.S. 1-180 that the judge state the evidence is met by presentation of the principal features of the evidence relied on by the prosecution and the defense. *State v. Guffey*, 265 N.C. 331, 144 S.E. 2d 14 (1965); *State v. Davis*, 246 N.C. 73, 97 S.E. 2d 444 (1957). A "verbatim recital of the evidence" is not required. *State v. Fowler*, 285 N.C. 90, 203 S.E. 2d 803 (1974). A party desiring further elaboration must aptly tender requests for further instructions. *State v. Guffey, supra.* Here, the trial judge set forth fairly and accurately the most important testimony offered by each side. It is true that the court spent more time summarizing the State's evidence than the evidence of the defendant but this was simply because the State presented considerably more evidence than

the defendant. *See State v. Jessup*, 219 N.C. 620, 14 S.E. 2d 668 (1941). Secondly, defendant maintains that the trial court substantially misstated his contentions in the following portion of the charge:

> "On the other hand, the defendant says and contends that you ought not to find him guilty from all the evidence in this case. That you ought not to believe what the State's witnesses say about it and at the very least you ought to have some reasonable doubt in your mind and return a verdict of not guilty in both cases."

Defendant states that the court should have said that it is the contention of the defendant that he was not even present at the Stout apartment in Salisbury and that he offered alibi witnesses to support this contention. Further, the court, according to the defendant, substantially misstated a portion of the evidence when it reviewed the testimony of Agent Cone on recall and stated that this testimony " . . . tends to show that he made an examination of an automobile registered to Jeannette Grier and that that automobile was clean; that they could find no debris or anything in the car." Defendant maintains Cone's testimony, that fingerprints taken from the car were those of Hutton and Sellers but that no fingerprints of the defendant were identifiable, should have been included in the court's recapitulation. However, defendant's objections come too late.

> " . . . [I]t is the general rule that objections to the charge in reviewing the evidence and stating the contentions of the parties must be made before the jury retires so as to afford the trial judge an opportunity for correction; otherwise they are deemed to have been waived and will not be considered on appeal." *State v. Virgil*, 276 N.C. 217, 230, 172 S.E. 2d 28, 36 (1970) ; *State v. Fowler, supra; Emanuel v. Clewis*, 272 N.C. 505, 158 S.E. 2d 587 (1968).

Defendant made no such objections. This assignment is overruled.

[11] Defendant next assigns as error the failure of the court to apply the applicable law to the evidence in not setting forth the acts of the defendant that would constitute aiding and abetting. The court in charging on this feature of the case first instructed the jury that they must find beyond a reasonable doubt that the crimes were committed by Sellers and Blackmon,

or either of them, and that in order to find this defendant guilty of aiding and abetting, the State must prove that the defendant was present at the time the crimes were committed, and that he " . . . knowingly advised, instigated, encouraged or aided Jack Sellers or Otis Blackmon or either of them to commit the crime . . . , " and that " . . . a person is not guilty of a crime merely because he is present at the scene. Even though he may silently approve of a crime or secretly assist in its commission. To be guilty, he must aid or actively encourage the person committing the crime or in some way communicate to this person his intention to assist in its commission. . . . " The court then specifically charged the jury that if they found " . . . beyond a reasonable doubt, . . . Sellers and Blackmon or either of them . . ." committed the crimes as charged and that " . . . defendant was present at the time the crime was committed and that he aided or encouraged them by holding a pistol on Hutton and keeping him from running to the officers and that in so doing the defendant knowingly advised, instigated, encouraged or aided Sellers or Blackman or either of them . . . it would be your duty to return a verdict of guilty as charged. However, if you do not so find or have a reasonable doubt as to one or more of those things, it would be your duty to return a verdict of not guilty." This assignment is without merit. *See State v. Rankin, supra; State v. Gaines, supra; State v. Hargett, supra; State v. Holland, supra.*

In a related point, the defendant asserts that the court erred in failing to require a finding that defendant *knowingly* aided and abetted others in the commission of the crime charged. Defendant does concede that the court used the word "knowingly" in one portion of the charge. In fact, a perusal of the charge discloses that all four times the court directly charged as to what the jury must find to return a verdict of guilty, the term "knowingly" was used. This assignment is overruled.

Next, defendant asserts that the court erred in reiterating the testimony of SBI Agent Pearce that in his opinion the explosion was caused by dynamite. He contended that this repetition left the clear impression with the jury that an explosion had occurred, thereby invading the province of the jury on this issue. As to this contention, we refer to our earlier discussion of Stout's testimony that he was injured by an "explosion," and to the stipulation entered by defendant's counsel that Stout was

injured by an explosion. Defendant is in no position to object to a repetition of this testimony in the charge.

Defendant's next assignment of error challenges the court's instruction concerning defendant's failure to testify. Defendant submitted the following special instruction to the court:

> "The defendant in this case has not testified. Any defendant may or may not testify in his own behalf and his failure to testify shall not create any presumption against him."

Rather than give the tendered instruction, the court charged the jury as follows:

> "Now, ladies and gentlemen of the jury, the defendant did not take the stand and testify in his own behalf. The Court instructs you the defendant has a right to testify if he so elects or he has a right to remain off the stand and the fact that the defendant has not taken the stand and testified in his own behalf should not be considered by you against him or to his prejudice at any stage for the defendant was exercising a right which the law gives to him."

[12] Defendant contends that he is entitled to an instruction in the *mandatory* language of G.S. 8-54 that his failure to testify "shall not create any presumption against him." However, defendant did not cite and we cannot find any case so holding. Our cases do not prescribe any mandatory formula but instead look to see if the spirit of G.S. 8-54 has been complied with. *State v. Paige,* 272 N.C. 417, 158 S.E. 2d 522 (1968) ; *State v. McNeill,* 229 N.C. 377, 49 S.E. 2d 733 (1948) ; *State v. Proctor,* 213 N.C. 221, 195 S.E. 816 (1938). Justice Lake, speaking for the Court in *State v. Baxter,* 285 N.C. 735, 208 S.E. 2d 696 (1974), stated the general rule that " . . . any instruction thereon is incomplete and prejudicially erroneous unless it makes clear to the jury that the defendant has the right to offer or to refrain from offering evidence as he sees fit and that his failure to testify should not be considered by the jury as basis for any inference adverse to him. . . . " The instruction in the present case easily meets this test. This assignment is overruled.

[13] Since defendant was being tried separately from the principals in this case, the trial judge charged the jury on the elements of the crimes for which Sellers and Blackmon, *or either of them,* must be found guilty before defendant could be

convicted of aiding and abetting. Defendant excepts to this alternative wording, complaining that it is confusing and misleading. The evidence clearly shows that both Sellers and Blackmon were principals; but, the court made it clear that as long as the jury found that one or both of them were guilty of all elements of the crimes, then defendant could be guilty of aiding and abetting if so found. No prejudicial error is made to appear by the use of the alternative wording.

[14]    Finally, defendant maintains that the court erred in not accurately charging as to the elements of the crimes with which defendant is charged. Defendant stood charged with two crimes: willful and malicious injury to a *person*, Albert Stout, by use of explosives and willful and malicious damage to *occupied personal property*, a 1974 Ford Torino, by means of explosives. Defendant now contends that the charge on the elements of these crimes was confusing and misled the jury into thinking that they only need find injury to Agent Stout in order to convict in both cases, rather than also finding damage to occupied personal property. Portions of the instruction are admittedly not models of clarity; however, construing the charge contextually we do not find any prejudicial error. The court correctly read the bills of indictment and the applicable statutes at the beginning of the charge. The court repeatedly referred to the two crimes accurately as: "damaging personal property, it being occupied at the time, by use of explosives," and "injuring Albert Stout, Jr., by use of explosives." Immediately before the jury retired to the jury room, the court repeated the two crimes for which defendant could be convicted and then gave the jury a sheet of paper on which the two separate charges were written to use in its deliberations.

A charge will be construed contextually as a whole, and when so construed it presents the law of the case in such a manner as to leave no reasonable cause to believe the jury was misled or misinformed, an exception thereto will not be sustained even though the instruction might have been more aptly given in different form. 7 Strong, N. C. Index 2d, Trial § 33; *Lewis v. Barnhill*, 267 N.C. 457, 148 S.E. 2d 536 (1966) ; *Phillips v. R. R.*, 257 N.C. 239, 125 S.E. 2d 603 (1962). All of the evidence showed extensive damage to the automobile as well as serious injury to Stout. We have carefully reviewed these instructions and we do not believe the jury was misled or confused as to the nature of the charges.

Other assignments concerning the jury instructions have been considered and found to be without merit.

An examination of the entire record discloses that defendant received a fair trial, free from prejudicial error. The verdicts and judgments must therefore be upheld.

No error.