STATE OF NORTH CAROLINA v. JOE HEDGEPETH

No. COA03-787

(Filed 6 July 2004)

**Rape— first-degree—assault on a female as lesser offense— instruction denied—short form indictment not applicable**

The trial court correctly denied an instruction on assault on a female to a first-degree rape defendant indicted under N.C.G.S. § 14-27.2. Where the indictment specifically alleges all of the elements of first-degree rape under N.C.G.S. § 14-27.2(a)(2)(a) & (b) and does not contain the specific averments or allegations of N.C.G.S. § 15-144.1 (the short form indictment, which can include assault on a female as a lesser offense), the court has jurisdiction only to issue instructions on first-degree rape and any lesser included offenses that meet the definitional test. Assault on a female does not meet that test because it contains elements not present in the greater offense of rape.

Appeal by defendant from judgment entered 18 April 2002 by Judge W. Osmond Smith in Wake County Superior Court. Heard in the Court of Appeals 17 March 2004.

*Attorney General Roy Cooper, by Assistant Attorney General Christopher W. Brooks, for the State.*

*Appellate Defender Staples Hughes, by Assistant Appellate Defender Benjamin Dowling-Sendor, for defendant appellant.*

McCULLOUGH, Judge.

Defendant was tried before a jury at the 16 April 2002 Criminal Session of Wake County Superior Court on the charge of first degree rape. The State's evidence tended to show the following: On 3 July 2001, Nicole Bouleris was dropped off by a friend at the Char-Grill Restaurant on Hillsborough Street in Raleigh, North Carolina. It was after 5:30 p.m., and she was planning on walking to a friend's house on Dorothea Drive to drink alcohol. On her way there, Nicole decided to follow a path that went through a wooded area. She did so around 6:00 p.m. while it was still light outside.

Nicole was then approached by defendant, who asked her something like, "Hey baby, what are you doing?" Nicole smiled at defend-

ant and said hello. Defendant asked Nicole if she wanted to hang out with him, to which Nicole replied in the negative and stated that she was going to her friend's house. Defendant then stepped in front of Nicole, about an arm's length away. Defendant again asked Nicole if she wanted to come hang out with him. Nicole again replied in the negative and stated she was going to her friend's house. Defendant then punched her in the nose, grabbed her around the neck, and said, "Shut the f*ck up," and dragged her into an area of bushes behind an abandoned building.

Behind the building, defendant grabbed her around the neck, threw her to the ground on something like a rug, and straddled her. He then slammed her head against the ground, punched her a few times, and choked her. He said repeatedly, "Shut the f*ck up, bitch. Shut the f*ck up." Defendant then took off Nicole's pants, leaving her shirt on, and when doing so found and removed a knife that Nicole had kept in a sheath clipped to her pants. Defendant held the knife to Nicole's neck and kept repeating, "Shut the f*ck up." He then said that if she did not keep quiet he would kill her, and "Do you think you are the first bitch I've killed?" He then cut her slightly on the neck.

A struggle ensued and Nicole knocked the knife out of defendant's hand. Defendant got mad and slammed Nicole's head against the ground, choking and punching her.

Defendant, having lost the knife, undid his pants. He than proceeded to have vaginal intercourse with Nicole, stating, "I'm going to f*ck that pussy and then I am going to kill you." When she continued to try to push him off with her legs, he hit her. She successfully pushed defendant off once, to which he came back at Nicole with both hands and began choking her. She never lost consciousness.

A nearby resident, Ms. Vanessa Crockett, witnessed two partially dressed adults in broad daylight amidst a sexual act. Ms. Crocket did not believe the female was struggling. Though she heard "don't hit me," she thought it might be something kinky and did not call the police until she conferred with a friend.

Officer S.R. Davis of the Raleigh Police Department was the first to arrive at the scene. As he approached, Officer Davis saw defendant having intercourse with a female. The female did not appear to be struggling, but the officer challenged defendant with his sidearm. Nicole heard somebody yell, scaring defendant. Defendant immediately jumped off Nicole, and she saw a police officer standing in the

woods. Officer Davis noticed defendant was totally naked and that Nicole had on only a shirt. In a matter of seconds, defendant had his pants on, which were either still around his ankles when the officer first approached or very close to him.

Before fleeing the scene, Nicole hit defendant in the face as hard as she could. She fled to a nearby store that she frequented. The owner of the store, a testifying witness for the State, noticed that Nicole was cut on the neck. Nicole next went to a friend's house, where she called her friend and housemate Ellie London to come get her. Ellie testified that when she picked Nicole up, she noticed blood on Nicole's neck and shirt. Ellie also noticed cuts, bruises, and scrapes on Nicole. Nicole did not want to go to the hospital, so Ellie took her home. They first stopped at the scene of the alleged rape, where Nicole sought to retrieve her shoes, knife, and her day planner. The day planner was not there.

Nicole contacted a rape counselor about three days after the incident. The counselor suggested Nicole go to the hospital and report the crime to the police. Nicole wrote a letter and e-mailed the Raleigh Police Department telling them what happened on 3 July 2001. Nicole herself was wanted for setting fire to a building, which she had done to escape involuntary commitment at Dorothea Dix Mental Hospital in Raleigh. Nicole decided to talk to the police in person on 26 July 2001. Nicole spoke consistently about the incident to the police and this was testified to by two members of the department. She confessed to the arson charges and was arrested after making a statement.

Defendant was found guilty of first degree rape and sentenced to a term from the presumptive range of a minimum of 480 months and a corresponding maximum of 585 months. He appealed. For the reasons stated below, we conclude defendant received a trial free from prejudicial error.

## FIRST DEGREE RAPE/SHORT FORM
## INDICTMENT FOR RAPE

At the outset, we note that while defendant sets forth five assignments of error in the record on appeal, those assignments not addressed in his brief are deemed abandoned, pursuant to Rule 28(b)(5) of the North Carolina Rules of Appellate Procedure.

The single issue properly preserved for our review in this case is whether the trial court committed prejudicial error by denying

defendant's request that the jury be given the option of the lesser, alternative instruction of assault on a female. The jury was given only guilty of first degree rape and. not guilty. Defendant argues that N.C. Gen. Stat. § 15-144.1 (2003), the short form indictment statute for rape, expressly authorizes the lesser alternative charge of assault on a female, and that the facts of this case support such an instruction. We do not find the short form indictment for rape applicable in this case.

Pursuant to N.C. Gen. Stat. § 14-27.2(a)(2) (2003), "In order to prove first degree rape, it is sufficient that the State demonstrate that the defendant engaged in vaginal intercourse with another person by force and against the will of the other person and either (1) employed or displayed a dangerous weapon, or (2) inflicted serious personal injury upon the victim or another person." *State v. Worsley,* 336 N.C. 268, 275, 443 S.E.2d 68, 71 (1994). An indictment under N.C. Gen. Stat. § 14-27.2(a)(2) will support a verdict of rape; it will also support a verdict of any lesser included offense of first degree rape, as an alternative verdict, where the evidence on an essential element of the first degree rape indictment is in conflict. *State v. Drumgold,* 297 N.C. 267, 271, 254 S.E.2d 531, 533 (1979). In determining whether one offense is a lesser included offense of another, we apply a definitional test as opposed to a case-by-case factual test. *State v. Weaver,* 306 N.C. 629, 636-37, 295 S.E.2d 375, 378-79 (1982), *overruled on other grounds by State v. Collins,* 334 N.C. 54, 431 S.E.2d 188 (1993); *see also State v. Bagley,* 321 N.C. 201, 362 S.E.2d 244 (1987), *cert. denied,* 485 U.S. 1036, 99 L. Ed. 2d 912 (1988). "If the lesser crime has an essential element which is not completely covered by the greater crime, it is not a lesser included offense." *Weaver,* 306 N.C. at 635, 295 S.E.2d at 379.

Under North Carolina law, assault on a female does not meet this definitional test because assault on a female contains elements not present in the greater offense of rape: (1) the element that the defendant be a male person; and (2) the element that he be at least eighteen years old. *State v. Herring,* 322 N.C. 733, 743, 370 S.E.2d 363, 370 (1988) (assault on a female not a lesser included offense of first degree rape); *see also State v. Wortham,* 318 N.C. 669, 351 S.E.2d 294 (1987) (assault on a female not lesser included offense of attempted second degree rape).

In his indictment, defendant was charged with violating N.C. Gen. Stat. § 14-27.2. The indictment stated the following:

[T]he defendant named above unlawfully, willfully, and felo-
niously did engage in vaginal intercourse with Nicole [], by force
and against the victim's will. The defendant used or displayed a
dangerous or deadly weapon, to wit: a knife, or the defendant
inflicted serious personal injury on Nicole [] by beating her on the
head and face and cutting her on the neck with the knife.

The indictment tracks the language of N.C. Gen. Stat.
§ 14-27.2(a)(2)(a) & (b). Defendant argues that the language of his
indictment is sufficient to meet the short form rape indictment,
N.C. Gen. Stat. § 15-144.1. That statute states:

In indictments for rape it is not necessary to allege every mat-
ter required to be proved on the trial; but in the body of the
indictment, after naming the person accused, the date of the
offense, the county in which the offense of rape was allegedly
committed, and the averment "with force and arms," as is now
usual, it is sufficient in describing rape to allege that the accused
person unlawfully, willfully, and feloniously did ravish and car-
nally know the victim, naming her, by force and against her will
and concluding as is now required by law. *Any bill of indictment
containing the averments and allegations herein named shall
be good and sufficient in law as an indictment for rape in the
first degree and will support a verdict of guilty of rape in the
first degree, rape in the second degree, attempted rape or
assault on a female.*

*Id.* (emphasis added). Defendant argues that his indictment in sub-
stance states all of the required averments and allegations in the
short form rape statute, and therefore defendant should be allowed
an instruction on the alternative offense of assault on a female.

Defendant cites *State v. Hatcher*, 117 N.C. App. 78, 450 S.E.2d 19
(1994), *appeal dismissed, disc. review denied*, 339 N.C. 618, 454
S.E.2d 261 (1995) as governing this issue. In *Hatcher*, the defendant
was indicted on second degree rape. After a hung jury and mistrial, he
was then indicted for attempted second degree rape and assault on a
female. *Id.* at 83-84, 454 S.E.2d at 23. The trial court dismissed these
·indictments finding that double jeopardy had attached to these
charges when the State initially chose to pursue a case on the single
indictment of second degree rape. We reversed, holding that double
jeopardy only attaches to charged crimes in specific instances, and
that in the double jeopardy context, there is no *de facto* acquittal of a
lesser and/or alternative theory of criminal liability when the State

chooses initially to pursue a greater theory but gets a hung jury. The *Hatcher* opinion stated:

> We note that in the instant case, the indictment for second degree rape would support a verdict for attempted second degree rape or assault on a female. Although defendant was not indicted for attempted second degree rape and assault on a female, defendant could still have been convicted of any of those charges under North Carolina General Statutes § 15-144.1[.]

*Id.* at 82, 454 S.E.2d at 23. Defendant would have us read *Hatcher* for the proposition that when a defendant is indicted specifically under N.C. Gen. Stat. § 14-27.3 (2003) for second degree rape, he automatically is subject to the charges of N.C. Gen. Stat. § 15-144.1, and the same would hold true for an indictment under first degree rape. We do not agree.

We cannot discern from the *Hatcher* opinion the language of the initial second degree rape indictment. If the initial indictment in *Hatcher* contained the "averments and allegations" as set out in N.C. Gen. Stat. § 15-144.1, we agree defendant could be charged with assault on a female even if the indictment cited N.C. Gen. Stat. § 14-27.3, but used the language of N.C. Gen. Stat. § 15-144.1. The language of N.C. Gen. Stat. § 15-144.1 states that "[a]ny bill of indictment containing the averments and allegations herein" is sufficient. But if the defendant was indicted under the exact language of N.C. Gen. Stat. § 14-27.3, then *Hatcher* is an anomaly and not controlling. *See Wortham*, 318 N.C. 669, 351 S.E.2d 294. Additionally, the Court's notation in *Hatcher* is dicta and not controlling.

In *Wortham*, our Supreme Court determined:

> Assault on a female not being a lesser included offense of attempted second degree rape for which defendant was indicted and defendant not having been otherwise charged with such an assault, the trial court had no *jurisdiction* to try, convict or sentence defendant for that offense.

*Id.* at 673, 351 S.E.2d 297 (emphasis added). *Herring* followed this rationale in holding that assault on a female was not a lesser included offense of first degree rape. *Herring*, 322 N.C. at 743, 370 S.E.2d at 370. Neither of these opinions mention N.C. Gen. Stat. § 15-144.1, though that statute was effective at the time of these decisions. The instant case is consistent with *Herring* and *Wortham*. Where the lan-

guage of the indictment alleges each element of first degree rape, then the trial court has jurisdiction to instruct the jury *only* on first degree rape and its lesser included theories. To hold otherwise would be to make an indictment under N.C. Gen. Stat. § 14-27.2 superfluous, as it would always be the equivalent to an indictment under N.C. Gen. Stat. § 15-144.1.

By using the express averment and allegations of N.C. Gen. Stat. § 15-144.1, the State gives the defendant notice of the potential theories of liability it may pursue based on the evidence it has acquired at that point and also protects the defendant from double jeopardy on any of that statute's listed offenses. *State v. Sills*, 311 N.C. 370, 375-76, 317 S.E.2d 379, 382 (1984). By using the exact language of N.C. Gen. Stat. § 14-27.2 in its indictment and citing it, the State gives defendant notice it will pursue the theory of first degree rape and foreclose pursuing a charge of assault on a female under that indictment. The court is without jurisdiction to instruct on that theory though the evidence may support it. It is the State's choice as to how to scale the benefits and risks of pursuing a greater degree of criminal liability under the more specific indictment.

Therefore, we hold that where the indictment specifically alleges all of the elements of first degree rape under N.C. Gen. Stat. § 14-27.2(a)(2)(a) & (b) and does not contain the specific averments or allegations of N.C. Gen. Stat. § 15-144.1, the court has jurisdiction only to issue instructions on that offense, and any lesser included offenses that meet the definitional test. The short form rape indictment is not at issue.

Therefore, we find the trial court properly denied defendant the jury instruction of assault on a female.

No error.

Judges BRYANT and ELMORE concur.