IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA23-319

Filed 2 April 2024

New Hanover County, No. 21 CRS 54343

STATE OF NORTH CAROLINA

v.

BRAYDEN DAVID WALKER

Appeal by Defendant from judgment entered 15 September 2022 by Judge Thomas H. Lock in New Hanover County Superior Court. Heard in the Court of Appeals 9 January 2024.

*Attorney General Joshua H. Stein, by Special Deputy Attorney General Mary Carla Babb, for the State.*

*Christopher J. Heaney, for Defendant.*

WOOD, Judge.

## I. Factual and Procedural History

On Halloween night, 31 October 2018, Brayden Walker ("Defendant") gathered with a group of friends, at least some of whom were recently graduated from the same high school, comprised of Patrick Wise ("Wise"), Riley Crouch ("Crouch"), Corey Webster ("Webster"), Austen Montouri ("Montouri"), and Nicholas Foutty ("Foutty"). Throughout the night, the group consumed some combination of alcohol, marijuana, Xanax, and LSD.

Prior to attending a Halloween party, the group gathered at Webster's house where, according to Crouch, they made a plan to find a girl, have sex with her, and film it. Crouch previously had testified the plan was Webster's idea, not Defendant's, and that nobody told Defendant about the plan. Montouri testified that there was no formal meeting or plan and that recording the sexual acts was impromptu.

At the Halloween party, Crouch made eye contact with a girl, N.P.,[1] and started talking to her. After fifteen to twenty minutes, Crouch and N.P. agreed to leave the party to go have sex alone at Webster's house. As Crouch and N.P. were leaving the party, Webster joined them. At Webster's house, N.P. had sex with Crouch and perhaps Webster.

The three then left Webster's and traveled to Foutty's house, where Walker and the other friends were hanging out, "winding down," and even starting to fall asleep. When Crouch and Webster arrived, however, the music was turned up and the friends starting partying once again. N.P. was the only female present, and Crouch gave her Xanax.

At some point, Crouch noticed Webster and N.P. come out of the bathroom, and N.P. began walking around Foutty's house topless. Crouch, while Defendant was standing next to him, began filming a video on Snapchat and shouted, "all gang on that shit," which Crouch testified meant everybody was engaging in sexual activity.

---

[1] Initials are used to refer to the girl to protect her identity pursuant to N.C. R. App. P. 42(b).

Afterward, everybody went to the back porch, and no one was engaging in sexual activity at that time.

Some time later, Crouch noticed Defendant and Foutty engaging in sexual activity with N.P. on a couch, and Crouch began recording once more, shouting phrases such as, "dog game" and "we lit." Finally, Crouch noticed once more that Defendant and Foutty were still engaging in sexual activity with N.P. on the couch, and he recorded a third video. Crouch did not know how long Defendant and Foutty had been engaging in sexual activity with N.P. when he started recording. Foutty testified at trial that he was aware he was being recorded while having sex with N.P. Other friends in the group also recorded the sexual activity with N.P. while standing within a few feet of her, including Wise and Montouri, who admitted at Defendant's trial to doing so. Each of the three videos was approximately a minute or less.

In January 2019, law enforcement officers discovered videos of the men having sex with N.P. after they pulled over Crouch for an unrelated traffic stop pertaining to a drug investigation and confiscated his phone. On 7 September 2021, Defendant was indicted for two counts of first-degree sexual exploitation of a minor in violation of N.C. Gen. Stat. § 14-190.16 (2022).

Defendant's trial was held during the 12 September 2022 criminal session of the New Hanover County Superior Court. The jury found Defendant guilty of both counts. The trial court sentenced Defendant to two concurrent sentences of 72-147

months' imprisonment. On 20 September 2022, Defendant filed written notice of appeal. All other relevant facts are provided as necessary in our analysis.

## II. <u>Analysis</u>

On appeal, Defendant argues there was insufficient evidence that he had a "purpose of producing material" portraying sexual activity with a minor. He further argues the trial court plainly erred in failing to instruct the jury on second-degree exploitation, allowing an officer to testify about an element of first-degree sexual exploitation of a minor, and stating the charged offense as "sexual assault" instead of "sexual exploitation" one time in its instructions to the jury. We address each argument in turn.

### A. Sufficiency of the Evidence as to Defendant's Purpose

Defendant argues the trial court erred in denying his motion to dismiss both charged counts of first-degree sexual exploitation of a minor. Specifically, Defendant argues there was insufficient evidence demonstrating he acted for the "purpose of producing material" portraying sexual activity with a minor because the evidence merely demonstrated he engaged in sexual activity with a minor which happened to be recorded. We disagree.

"This Court reviews the trial court's denial of a motion to dismiss *de novo*." *State v. Smith*, 186 N.C. App. 57, 62, 650 S.E.2d 29, 33 (2007). Our Supreme Court has detailed the standard of review for a motion to dismiss:

When considering a motion to dismiss for insufficiency of evidence, the court is concerned only with the legal sufficiency of the evidence to support a verdict, not its weight, which is a matter for the jury. The evidence must be considered in the light most favorable to the state; all contradictions and discrepancies therein must be resolved in the state's favor; and the state must be given the benefit of every reasonable inference to be drawn in its favor from the evidence. There must be substantial evidence of all elements of the crime charged, and that the defendant was the perpetrator of the crime.

*State v. Barnett*, 368 N.C. 710, 713, 782 S.E.2d 885, 888 (2016). "Circumstantial evidence may be utilized to overcome a motion to dismiss even when the evidence does not rule out every hypothesis of innocence." *State v. Winkler*, 368 N.C. 572, 575, 780 S.E.2d 824, 826 (2015) (quotation marks omitted).

State statute provides that a person commits first-degree sexual exploitation of a minor if he, "knowing the character or content of the material or performance, . . . [*u*]*ses*, employs, induces, coerces, encourages, or facilitates a minor to engage in or assist others to engage in sexual activity . . . for the purpose of producing material that contains a visual representation depicting this activity." N.C. Gen. Stat. § 14-190.16(a)(1) (emphasis added).

A defendant may be guilty of a crime by acting in concert with another who commits a crime. As our Supreme Court has explained:

It is not . . . necessary for a defendant to do any particular act constituting at least part of a crime in order to be convicted of that crime under the concerted action principle so long as he is present at the scene of the crime and the evidence is sufficient to show he is acting together with

another who does the acts necessary to constitute the crime pursuant to a common plan or purpose to commit the crime.

*State v. Joyner*, 297 N.C. 349, 357, 255 S.E.2d 390, 395 (1979). Acting in concert "may be shown by circumstances accompanying the unlawful act and conduct of the defendant subsequent thereto." *In re J.D.*, 376 N.C. 148, 156, 852 S.E.2d 36, 43 (2020) (quotation marks omitted). "The communication or intent to aid, if needed, does not have to be shown by express words of the defendant but may be inferred from his actions and from his relation to the actual perpetrators." *State v. Sanders*, 288 N.C. 285, 291, 218 S.E.2d 352, 357 (1975). "However, the mere presence of the defendant at the scene of the crime, even though he is in sympathy with the criminal act and does nothing to prevent its commission, does not make him guilty of the offense." *In re J.D.*, 376 N.C. at 156, 852 S.E.2d at 43 (quotation marks and brackets omitted).

In the case *sub judice*, the trial court correctly instructed the jury regarding the elements of the crime:

> First, that the defendant used a person to engage in sexual activity for the purpose of producing material that contains a visual representation depicting this activity. Vaginal intercourse is sexual activity;
>
> Second, that that person was a minor. A minor is an individual who is less than 18 years old and who is not married or judicially emancipated. Mistake of age is not a defense;
>
> And third, that the defendant knew the character or content of the material.

Over Defendant's objection, the trial court also correctly instructed the jury on acting in concert using the following language:

> For a defendant to be guilty of a crime, it is not necessary that the defendant do all of the acts necessary to constitute the crime. If two or more persons join in a common purpose to commit first-degree sexual assault of a minor, each of them is guilty of the crime; however, a defendant is not guilty of a crime merely because the defendant is present at the scene even if the defendant may secretly approve of the crime or secretly intend to assist in its commission.
>
> To be guilty, the defendant must aid or actively encourage the person committing the crime or in some way communicate to another person the defendant's intention to assist in its commission.

Here, whether or not the plan was specifically communicated to Defendant, Crouch's testimony was that at least he and possibly other members of the group had a preconceived plan to find a girl, have sex with her, and film it. The purpose of recording would have been clear when Crouch pulled out his phone and, in the first recording, shouted "all gang on that shit," announcing an intent for all or some of the friends to engage in sexual activity with N.P. with the knowledge that Crouch was recording. Defendant himself was standing next to Crouch in the first video, which would have made him aware of the group's intent to have sex with N.P. while Crouch recorded. Defendant did not have to state expressly that he had a "purpose to produce material" and indeed, such direct evidence is rare and unnecessary to sustain a conviction. *Winkler*, 368 N.C. at 576, 780 S.E.2d at 826; *Sanders*, 288 N.C. at 291, 218 S.E.2d at 357.

In the second video, N.P. can be seen performing oral sex on Foutty, who is sitting on the couch, while Defendant is behind her engaging in, or attempting to engage in, vaginal intercourse. Wise can be seen standing only feet away from them with his phone out, recording them. In the second and third videos, Defendant can be seen laughing, smiling, and looking towards his friends who are recording him, demonstrating he was aware they were recording and was actively participating in the group's intent to film sexual acts with a minor.

It was not necessary for Defendant to have formed or to have been aware of a preconceived plan to have sex with N.P. and to film it. The jury was entitled to infer from the "circumstances accompanying the unlawful act and conduct of the defendant subsequent thereto" that Defendant formed the necessary intent to engage in sexual activity with N.P. for the purpose of producing the Snapchat recordings while he was in the midst of doing so. *In re J.D.*, 376 N.C. at 156, 852 S.E.2d at 43. Defendant was friends with the other members of the group. *Sanders*, 288 N.C. at 291, 218 S.E.2d at 357 (a defendant's relation to the actual perpetrators is relevant in proving one acted in concert with the perpetrators). His active participation in the sexual activity which others recorded, as shown by his smiling, laughing, and looking towards his friends as they recorded, demonstrates that he was more than present or merely approving of what was happening. *In re J.D.*, 376 N.C. at 156, 852 S.E.2d at 43. His actions tend to show that he was "acting together with another" or others who recorded the acts and who also had the purpose of producing the Snapchat videos

within the meaning of N.C. Gen. Stat. § 14-190.16(a)(1). *Joyner*, 297 N.C. at 357, 255 S.E.2d at 395.

Therefore, even presuming Defendant himself was not the principal who committed the crime, substantial evidence demonstrates he acted in concert with his friends by engaging in the sexual activity which they recorded with the knowledge they were recording it. Accordingly, the trial court did not err in denying Defendant's motion to dismiss.

**B. No Instruction on Second-Degree Exploitation of a Minor.**

Defendant argues the trial court plainly erred in failing to instruct the jury on second-degree exploitation of a minor because it is a lesser-included offense of first-degree sexual exploitation. Defendant argues in the alternative that even if second-degree sexual exploitation is not a lesser-included offense, because any purported evidence of first-degree sexual exploitation was conflicting, the trial court was required to instruct the jury on second-degree sexual exploitation.

We review unpreserved issues pertaining to potential errors in the trial court's instructions to the jury for plain error. N.C. R. App. P. 10(a)(4); *see also State v. Gregory*, 342 N.C. 580, 584, 467 S.E.2d 28, 31 (1996).

Our Supreme Court has held:

> [A] trial judge must instruct the jury on all lesser included offenses that are supported by the evidence, even in the absence of a special request for such an instruction, and that the failure to do so is reversible error which is not cured by a verdict finding the defendant guilty of the

greater offense. Only when the evidence is clear and positive as to each element of the offense charged and there is no evidence supporting a lesser included offense may the judge refrain from submitting the lesser offense to the jury.

*State v. Montgomery*, 341 N.C. 553, 567, 461 S.E.2d 732, 739 (1995) (citation and quotation marks omitted). This Court has explained that "[i]n determining whether one offense is a lesser included offense of another, we apply a definitional test as opposed to a case-by-case factual test. If the lesser crime has an essential element which is not completely covered by the greater crime, it is not a lesser included offense." *State v. Hedgepeth*, 165 N.C. App. 321, 324, 598 S.E.2d 202, 205 (2004) (citations and quotation marks omitted).

A person commits first-degree sexual exploitation of a minor if he:

> (1) *Uses*, employs, induces, coerces, encourages, or facilitates a minor to engage in or assist others to engage in sexual activity for a live performance or for the purpose of producing material that contains a visual representation depicting this activity; or
>
> (2) Permits a minor under his custody or control to engage in sexual activity for a live performance or for the purpose of producing material that contains a visual representation depicting this activity; or
>
> (3) Transports or finances the transportation of a minor through or across this State with the intent that the minor engage in sexual activity for a live performance or for the purpose of producing material that contains a visual representation depicting this activity; or
>
> (4) Records, photographs, films, develops, or duplicates for sale or pecuniary gain material that contains a visual

> representation depicting a minor engaged in sexual activity.

N.C. Gen. Stat. § 14-190.16(a) (emphasis added). A person commits second-degree sexual exploitation of a minor, however, if he "(1) [r]ecords, photographs, films, develops, or duplicates material that contains a visual representation of a minor engaged in sexual activity; or (2) [d]istributes, transports, exhibits, receives, sells, purchases, exchanges, or solicits material that contains a visual representation of a minor engaged in sexual activity." N.C. Gen. Stat. § 14-190.17(a) (2022).

Here, Defendant's indictment stated he "did *use* and coerce and encourage a minor female" to engage in the sexual activity. (Emphasis added). Ultimately, the trial court instructed the jury on first-degree sexual exploitation of a minor pursuant to N.C. Gen. Stat. § 14-190.16(a)(1), specifically pertaining to the "use" of a minor for producing material. The trial court used North Carolina Pattern Jury Instruction ("NCPI Crim.") 238.21, titled "First Degree Sexual Exploitation of a Minor (Using or Employing a Minor to Engage in or Assist Others in Engaging in Sexual Activity)." NCPI Crim. 238.21. If the trial court had instructed the jury on second-degree exploitation of a minor, it would have used one of the two existing pattern jury instructions for the offense. One of the instructions pertains to producing material under N.C. Gen. Stat. § 14-190.17(a)(1), and the other pertains to circulating material under N.C. Gen. Stat. § 14-190.17(a)(2). *See* NCPI Crim. 238.22–22A. Of these, only the instruction pertaining to producing material would be relevant because there was

no allegation that Defendant distributed, transported, exhibited, sold, purchased, exchanged, or solicited material under N.C. Gen. Stat. § 14-190.17(a)(2). Therefore, our analysis is limited to whether N.C. Gen. Stat. § 14-190.17(a)(1), regarding recording, photographing, filming, developing, or duplicating material, is a lesser-included offense of N.C. Gen. Stat. § 14-190.16(a)(1), regarding the use of a minor to produce material.

NCPI Crim. 238.21 lists, in pertinent part, the elements of first-degree sexual exploitation of a minor pursuant to N.C. Gen. Stat. § 14-190.16(a)(1) in the following manner: "First, that the defendant used a person to engage in sexual activity for the purpose of producing material that contains a visual representation depicting this activity. . . . Second, that [the] person was a minor. And Third, that the defendant knew the character or content of the material." NCPI Crim. 238.21 (emphasis in original). In contrast, NCPI Crim. 238.22 lists the elements of second-degree sexual exploitation of a minor pursuant to N.C. Gen. Stat. § 14-190.17(a)(1) in the following manner: "First, that the defendant recorded, photographed, filmed, developed, or duplicated material that contains a visual representation of a minor engaged in sexual activity. And Second, that the defendant knew the character or content of the material." NCPI Crim. 238.22 (emphasis in original). Therefore, N.C. Gen. Stat. § 14-190.17(a)(1) requires that there be some type of recording, or in other words, that such illicit material actually was *in existence at some point*. Without an actual recording or photograph of the sexual activity, there would be nothing to prosecute

and no violation of N.C. Gen. Stat. § 14-190.17(a)(1). In contrast, it is possible for one to violate N.C. Gen. Stat. § 14-190.16(a)(1) without successfully producing material. For example, if one used a minor to engage in sexual activity for the purpose of producing material, and afterwards learned that the phone or camera failed to record (because, for example, the perpetrator forgot to press the "record" button or the device malfunctioned), he still would be in violation of N.C. Gen. Stat. § 14-190.16(a)(1) for using a minor to engage in sexual activity for the *purpose of producing material*, regardless of whether or not he successfully recorded it. As Defendant's counsel admitted to the trial court while objecting to an instruction on accomplice testimony:

> I also think that the crime can be committed without a recording actually taking place. If somebody, like I said, forg[o]t to turn the record button but you've engaged in this sexual activity for the purpose of creating a visual representation, I am not sure the recording is required. I think it goes more to the purpose of the sexual act.

The focus of first-degree sexual exploitation is the direct mistreatment of the minor or the production of material for sale or profit: *using*, *employing*, *inducing*, *coercing*, *encouraging*, or *facilitating* "a minor to engage in or assist others to engage in sexual activity for a live performance or for the purpose of producing material that contains a visual representation depicting this activity." N.C. Gen. Stat. § 14-190.16(a)(1). The focus of second-degree sexual exploitation, however, is the criminalization of the actions of one who is "merely" involved in the production or after-the-fact distribution of such material, without the requirement that the

production of such material be for sale or pecuniary gain. Our Supreme Court made

this point when it explained:

> Under the current statutory scheme, a defendant can be convicted of sexual exploitation of a minor in the event that he commits a variety of acts, with the defendant's conduct being subject to varying degrees of punishment depending upon the nature and extent of the defendant's involvement with the minor in question. . . . [T]he common thread running through the conduct statutorily defined as *second-degree sexual offense* [is] that the defendant had taken an active role in the production or distribution of child pornography without directly facilitating the involvement of the child victim in the activities depicted in the material in question. . . . [T]he acts necessary to establish the defendant's guilt of *first-degree sexual exploitation of a minor* can be categorized as involving either direct facilitation of the minor's involvement in sexual activity or the production of child pornography for sale or profit.

*State v. Fletcher*, 370 N.C. 313, 320–21, 807 S.E.2d 528, 534–35 (2017) (emphasis

added).

Therefore, we hold that second-degree sexual exploitation of a minor pursuant

to N.C. Gen. Stat. § 14-190.17(a)(1) is not a lesser-included offense of N.C. Gen. Stat.

§ 14-190.16(a)(1). Thus, the trial court did not plainly err in failing to instruct the

jury on second-degree sexual exploitation of a minor.

## C. Officer's Testimony Regarding an Element of the Charged Offense

Defendant next argues the trial court plainly erred in allowing an officer to

testify that N.C. Gen. Stat. § 14-190.16(a)(1) merely requires filming the sexual

activity with a minor rather than a preexisting plan to film the activity. Specifically,

Defendant argues the officer's testimony improperly and inaccurately instructed the jury that Defendant merely being filmed having sex with N.P. constituted a violation of N.C. Gen. Stat. § 14-190.16(a)(1) and misdirected the jury's attention from the statute's requirement that the defendant have the intent to produce material. We disagree.

Because Defendant did not object to the testimony at trial, we review this issue for plain error. N.C. R. App. P. 10(a)(4); *see also Gregory*, 342 N.C. at 584, 467 S.E.2d at 31.

"It is the duty of the trial court to instruct the jury on all substantial features of a case raised by the evidence. The purpose of such a charge to the jury is to give a clear instruction to assist the jury in an understanding of the case and in reaching a correct verdict." *State v. Shaw*, 322 N.C. 797, 803, 370 S.E.2d 546, 549 (1988) (citation omitted). "The trial court, not witnesses, must define and explain the law to the jury." *State v. Harrell*, 96 N.C. App. 426, 430, 386 S.E.2d 103, 105 (1989).

Here, defense counsel cross-examined the lead detective in the case, Sam Smith ("Detective Smith"), about a conversation he had with Crouch after he arrested him in October 2019. On redirect, the State drew Detective Smith's attention to defense counsel's questions, stating:

> [Y]our answer was that Mr. Crouch said that there was --
> everybody that night knew that there was an agreement
> that [N.P.] was going to have sex with anyone they wanted
> to?

Detective Smith answered, "correct," and the State asked him, "And you said it was inferred. So what do you mean by that? Help us understand what you mean by that. He didn't exactly -- he didn't specifically use the word 'plan'?" The State asked, "Explain what you meant by 'inferred'?" Detective Smith answered, "That there were other ways to say that there's a plan without saying 'This is the plan.'" The State then asked, "And you also said on cross-examination that you did not ask Riley Crouch any questions about filming that night?" Detective Smith answered, "Correct," and finally, the State asked him, "Why did you not ask Riley Crouch any questions about the filming of the sexual activity?" Detective Smith answered, "Because a violation of the statute doesn't require like the -- one, as I mentioned earlier, *it was clearly all filmed and the statute doesn't require a plan to film it, just that it's filmed.*" (Emphasis added).

The State's questions on redirect and Detective Smith's responses were clearly aimed at developing clarifying testimony about his responses to defense counsel on cross-examination and his reasoning and motive for how he questioned Crouch after his arrest. Detective Smith simply answered why he did not feel compelled to question Crouch regarding the filming of the sexual activity, and he gave a logical, albeit legally incorrect, response. Defense counsel then had an opportunity for recross-examination, after which the trial proceeded. Therefore, Detective Smith's testimony made sense in context and did not constitute improper instructions to the jury. The trial court properly instructed the jury on the elements of the charged

crime. Accordingly, the trial court did not plainly err when it permitted Detective Smith to testify as he did.

**D. Trial Court's Accidental Reference to the Charged Crime as Sexual Assault**

Defendant next argues the trial court's reference to the charged crime of first-degree sexual exploitation of a minor as "sexual assault" during its instruction to the jury on acting in concert constituted prejudicial error because it shifted the jury's attention from the specific intent requirement and to the sexual activity itself. We disagree.

Defendant cites *State v. Lee* for the proposition that any objection to an instruction preserves any alleged error with that instruction for appellate review. 370 N.C. 671, 811 S.E.2d 563 (2018). The court in *Lee* specifically stated:

> When a trial court agrees to give a *requested* pattern instruction, an erroneous deviation from that instruction is preserved for appellate review without further request or objection. A *request* for an instruction at the charge conference is sufficient compliance with the rule to warrant our full review on appeal where the requested instruction is subsequently promised but not given, notwithstanding any failure to bring the error to the trial judge's attention at the end of the instructions.

370 N.C. at 676, 811 S.E.2d at 567 (brackets omitted) (emphasis added). Here, however, Defendant did not request the instruction; rather, he objected to it. The trial court inadvertently referred to the charged crime as sexual assault during its instruction on acting in concert:

> For a defendant to be guilty of a crime, it is not necessary that the defendant do all of the acts necessary to constitute the crime. If two or more persons join in a common purpose to commit first-degree *sexual assault* of a minor, each of them is guilty of the crime.

(Emphasis added). Defendant objected to the trial court's proposed instruction on acting in concert: "I mean, I don't think the acting in concert is appropriate." Defendant, however, never objected when the trial court referred to the charged crime as sexual assault. Therefore, the rule stated by the court in *Lee* that any alleged error regarding a *requested* jury instruction is preserved as long as a Defendant at some point during the trial objected to the instruction does not apply here to preserve the issue for full appellate review. Accordingly, we review the issue for plain error. N.C. R. App. P. 10(a)(4); *see also Gregory*, 342 N.C. at 584, 467 S.E.2d at 31.

Our Supreme Court has held:

> The charge of the court must be read as a whole[,] in the same connected way that the judge is supposed to have intended it and the jury to have considered it. It will be construed contextually, and isolated portions will not be held prejudicial when the charge as a whole is correct. If the charge presents the law fairly and clearly to the jury, the fact that some expressions, standing alone, might be considered erroneous will afford no ground for reversal.

*State v. Hooks*, 353 N.C. 629, 634, 548 S.E.2d 501, 505 (2001) (citation, ellipses, and brackets omitted).

Although the trial court misstated the charged crime once in its jury instruction regarding acting in concert, the trial court properly instructed the jury on

the elements of the first count of first-degree sexual exploitation of a minor. It also correctly stated the elements of the charged crime for the second count of first-degree sexual exploitation of a minor. Moreover, during its second instruction to the jury on acting in concert, the trial court correctly named the charged crime as "first-degree sexual exploitation of a minor." The jury, therefore, would have been aware of the correctly charged crime. A one-time, inadvertent misnomer, otherwise correctly stated three times, would not have confused the jury and does not constitute plain error in a jury instruction. Accordingly, read as a whole, the trial court correctly instructed the jury regarding the charged crime, notwithstanding a single misnaming of the offense. *Hooks*, 353 N.C. at 634, 548 S.E.2d at 505.

## III. Conclusion

In summary, we hold there was sufficient evidence for the jury to convict Defendant of first-degree sexual exploitation of a minor. The trial court did not plainly err in failing to instruct on second-degree sexual exploitation of a minor, allowing the officer's testimony explaining his actions based on what he believed was an element of the crime, or inadvertently misnaming the charged offense once in its jury instructions, when read as a whole, the trial court otherwise correctly instructed the jury. We hold Defendant received a fair trial free from error.

NO ERROR.

Judges FLOOD and STADING concur.